GEORGE D. RATHBONE v. JAMES C. HOPPER, *as County Clerk of Ness County, Kansas, et al.*

No. 10489.

1. CONSTITUTION, TITLE OF ACT—*"Municipal corporations" may include townships*. The term "municipal corporations" employed in the title of chapter 50, Laws of 1879, includes townships, and the provisions of that act authorizing the refunding of township indebtedness are not in conflict with section 16 of article 2 of the Constitution.

2. MUNICIPAL BONDS—*unrestricted power to issue authorizes negotiable*. That act authorizes the issuance of negotiable bonds.

*Original Proceeding in Mandamus.*

PEREMPTORY WRIT ALLOWED.     OPINION FILED JULY 11, 1896.

*Gleed, Ware & Gleed*, for plaintiff.

*Buchan, Freeman & Porter*, for defendants; *Silas Porter*, of counsel.

JOHNSTON, J. This is an original proceeding in *mandamus* to compel the levy of a tax upon the property in Forrester Township, Ness County, for the payment of interest which has accrued upon refund-

ing bonds issued by the township. It appears that in April, 1889, the township voted $20,000 in bonds, payable in 20 years and bearing interest at seven per cent. per annum, to aid the Ness County Sugar-Mill Company; and in October of the same year they were refunded in bonds running 30 years and bearing interest at six per cent. per annum, in accordance with the provisions of chapter 50, Laws of 1879. The petition alleges that the refunding bonds were negotiable, payable to bearer, and had been duly registered by the Auditor of the State of Kansas, who certified that they had been regularly and legally issued in conformity with the laws of the State. Default has been made in the payment of the interest, and the local authorities decline to levy a tax, claiming that the original bonds were invalid because they were issued in aid of a private enterprise, and also that the act under which they were issued does not authorize the issue of refunding bonds by townships, nor the issue of negotiable bonds, such as were issued by the township, in any case.

The questions submitted for decision are raised on a motion to quash the alternative writ, and the first is that the title of the act under which the bonds were issued is not broad enough to cover the provisions authorizing the refunding of township indebtedness.

1. The term "municipal corporations" includes townships.

The title is as follows: "An act to enable counties, municipal corporations, the board of education of any city, and school districts to refund their indebtedness." Express authority is given in the body of the act for refunding township indebtedness. Townships are mentioned in connection with counties, cities and school districts in almost every section, and the provisions of the act apply substantially alike to each municipality, except

16—57 KAN.

that townships and school districts cannot refund their debts without the assent of the voters expressed at an election held for that purpose. It was the manifest purpose of the Legislature to confer authority upon townships to refund their indebtedness, and the question for decision is whether the general term "municipal corporations," employed in the title, is sufficiently broad to cover those provisions.

In this State each organized township is a body politic and corporate, with power to make all contracts that may be necessary and convenient for the exercise of its corporate powers, and in its proper name may sue and be sued. A township is generally spoken of as a municipality or municipal corporation, but, strictly speaking, every political subdivision of the state organized for the administration of civil government is a *quasi* corporation. In this respect they are placed on the same plane as counties and school districts, and in this Court, in determining the liability of this class of corporations for failure to perform some corporate duty, or for the neglect or misfeasance of its officers and agents, it has been held that counties, townships and school districts are not municipal corporations proper, and that their liabilities in this respect are not the same as incorporated cities, towns and villages. *Beach v. Leahy, Treasurer*, 11 Kan. 23; *Eikenberry v. The Township of Bazaar*, 22 id. 561; *Comm'rs of Marion Co. v. Riggs*, 24 id. 255; *Freeland v. Stillman*, 49 id. 197. In all these cases and for the purpose of determining their liabilities and powers, the distinction between municipal corporations proper and other public corporations has been made. In the broader sense and in common usage the term "municipal corporations" includes counties and townships. All public corporations, including counties, cities and

townships, are frequently referred to as municipalities and municipal corporations to distinguish them from private corporations, and it is not uncommon to find them so designated in the State and Federal courts and in the published reports of their decisions. In a very recent case Chief Justice HORTON referred to a township as a "public municipal corporation," and the same language is employed both in the syllabus and in the opinion. *Riley v. Garfield Township*, 54 Kan. 463. In 15 Am. & Eng. Encyc. Law, 953, the following definition is given :

"A municipal corporation, in its broader sense, is a body politic, such as a state, and each of the governmental subdivisions of the state, such as counties, parishes, townships, hundreds, New England 'towns,' and school districts, as well as cities and incorporated towns, villages and boroughs. Every one of these is properly susceptible of the general appellation."

Here, then, we have in the title a term which, if taken in the broader sense and popular signification, would include townships, and render the act valid ; while, if taken in the more restricted and

2. Unrestricted power to issue municipal bonds authorizes issuance of negotiable bonds.

technical sense, it would render it invalid. What sense shall be imputed to the Legislature, and which interpretation should be given to the term? No one can doubt that the Legislature intended to make a title broad enough to cover the provisions of the act with reference to townships, and this is the more apparent from the amendments made to the act long after the passage of the original act and after large amounts of township indebtedness had been refunded under its provisions. Ch. 163, Laws 1891 ; ch. 113, Laws 1893. The obvious intention of the Legislature is entitled to great weight in determining the sufficiency of the

title. In *Woodruff v. Baldwin*, 23 Kan. 494, it was held in a similar case to be more just and fair to say that the Legislature used the title in its broadest sense — a sense broad enough to include the subject-matter of the act, rather than to apply the restricted meaning which would to some extent defeat the legislative purpose. The same view was taken in *In re Pinkney, Petitioner*, 47 Kan. 89. There, a term was employed in the title to an act which, if given the broader meaning, would uphold the act, while by giving it the narrower and perhaps more common meaning would render it invalid, and it was held that the Legislature, having employed the word in its broadest sense and one which fairly covered the provision assailed, the Court was not warranted in adopting the narrower meaning and thus holding the act invalid. It was said that the fact that general terms are employed in the title does not render it objectionable so long as the title to the act is such that neither the members of the Legislature nor the people to be affected can be misled. The defendants place some reliance upon the language used in *Freeland v. Stillman*, supra, but an attentive reading of the decision shows that it is not controlling. In that case, the Court was not considering the title to an act, but was endeavoring to ascertain the intention of the Legislature, and from the connection in which " municipal corporations " was used it could be readily seen that school districts were not within the purpose of the Legislature in framing the act. Here, the provisions of the body of the act in question show beyond cavil that the Legislature intended to authorize townships to refund their indebtedness ; and we have to decide whether that intention shall be thwarted by a technical interpretation of the title to the act.

In making the distinction between the different kinds of public corporations it is common to refer to cities as municipal corporations proper. This is a discriminating expression frequently used by the courts of this State, and if that term had been employed in the title there would be some reason for the strict interpretation for which the defendants contend. A technical interpretation, however, has never been applied in this State to the titles of legislative acts. On the other hand, it has been consistently held that the constitutional limitation should not be enforced in any narrow or technical spirit, but should be liberally interpreted with a view of upholding the acts of the Legislature. It has been regarded to be the duty of the Court to view the acts of the Legislature with great respect, and so far as possible endeavor to reconcile and sustain them. Illustrations of liberal interpretations placed upon the titles of acts may be found in almost every volume of our decisions, but we need only refer to a few of them. *Woodruff v. Baldwin*, supra; *Philpin v. McCarty, Supt., &c.*, 24 Kan. 393; *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.*, 26 id. 181; *Comm'rs of Cherokee Co. v. The State, ex rel.*, 36 id. 337; *Mo. Pac. Rly. Co. v. Harrelson*, 44 id. 253; *The State v. Bush*, 45 id. 140; *In re Pinkney, Petitioner*, 47 id. 89; *The State, ex rel., v. Lewelling*, 51 id. 562; *In re Sanders, Petitioner*, 53 id. 191; *Lynch v. Chase*, 55 id. 367; *Rogers v. Morrill*, 55 id. 737.

The act has been in force for more than 17 years, and upon the theory that the title was good and the act valid a vast number of the townships of the State have issued bonds which have been negotiated in the money markets of the country and accepted as valid securities. The official reports show that the State holds a considerable amount of such bonds, purchased

as an investment of the permanent school fund and other funds. The validity of the act is assailed here for the first time, but we think the scope and effect of the series of decisions heretofore cited compel us to hold that the term "municipal corporations" as used in the title of the act should be interpreted so as to include townships.

We are unable to agree with the contention that the refunding bonds are non-negotiable, and that in the hands of *bona fide* holders they are subject to the same defenses as would have been available against the immediate payee. They are specifically alleged to be negotiable in the alternative writ; are negotiable in form; and we think the act under which they are issued contains no restrictions which take away the attribute of negotiability or except them from the rules commonly applied to such municipal securities. Prior to the enactment of the refunding law of 1879 a great number of special acts had been passed to refund the accrued and accruing indebtedness of counties, cities, townships and school districts. It was the obvious purpose of the Legislature of 1879 to frame a general refunding law which would be available to all municipalities. The act provides for the issuance of interest-bearing bonds with coupons attached, to run for a period of 30 years or less, the bonds and coupons to be signed by the officers and in the ordinary manner in which municipal bonds are executed. They are required to be issued in denominations of from $100 to $1,000, payable at a place to be designated upon the face thereof, and to contain a recital of the act under which they are issued. Where authority is given to a municipality to issue bonds of this character, without restriction as to negotiability, there is a fair implication that nego-

3. Refunding bonds are negotiable.

tiable bonds are to be issued. The provisions of this act in respect to the character of the bonds to be issued are substantially the same as those of the numerous refunding acts of Kansas, and the bonds that have been issued under them have been regarded as negotiable by the people of the State and have been so accepted in the commercial world. This question was recently before the United States Circuit Court of Appeals, and it was held that the objection that the act did not authorize the issue of negotiable bonds was untenable. SANBORN, J., in pronouncing the judgment of the court, said that —

"The act under consideration in this case authorized this township ' to issue new bonds,' without any restriction as to their negotiability. This grant of power to a municipal body to issue bonds must be interpreted to give that body power to issue municipal bonds in the usual form of such securities. The usual — nay, it may almost be said the universal — form of such securities is that of a negotiable bond payable to bearer ; and, in our opinion, it was bonds in this form, and in no other, that the Legislature of Kansas had in mind and intended to give this township power to issue by this act. *City of Cadillac v. Woonsocket Inst. for Sav.*, 58 Fed. Rep. 935 ; *Ashley v. Supervisors*, 60 Fed. Rep. 55, 66." *West Plains Tp. v. Sage*, 69 Fed. Rep. 943.

In the same connection that Court held, and we think correctly, that the provision that new bonds should be issued to the holder of the old indebtedness does not require that he shall be named as payee in the bonds, and is not to be interpreted as a restriction upon the negotiable character of the bonds issued. The issue and delivery of the bonds payable to bearer, which is the usual method employed, would seem to be a full compliance with that provision of the statute. Its main purpose was to require the officers to deal

directly with the holder of the indebtedness, so that no refunding bonds should be issued until the old indebtedness was delivered up for cancellation. It is significant, too, that the amendatory act of 1891, passed 12 years after the original act, distinctly provides for the sale of the refunding bonds, and prevents the municipal authorities from negotiating such bonds at less than par or at a higher rate of interest than six per cent. per annum. This provision goes upon the theory that the bonds are negotiable, and in a certain sense is a legislative interpretation of that part of the act. Neither can we see that the provision requiring the County Clerk to keep a record of the refunding proceedings, showing the character of the refunding bonds and the persons who surrendered the old and received the new form of indebtedness, indicates a legislative purpose to restrict the negotiable character of the securities to be issued. It is no more than the ordinary record which officers are required to keep of important business concerns, and is but a repetition of what already appears in the records of the township.

The peremptory writ will be allowed.

MARTIN, C. J. (concurring specially). I entertain much doubt of the correctness of the decision of the majority as expressed in the first point of the syllabus. Heretofore the distinction between municipal corporations and *quasi* corporations has always been maintained by this Court. *Beach v. Leahy, Treasurer*, 11 Kan. 23, 28, 29 ; *Eikenberry v. The Township of Bazaar*, 22 id. 556, 561 ; *Comm'rs of Marion Co. v. Riggs*, 24 id. 255, 258 ; *Freeland v. Stillman*, 49 id. 197, 207. The title of this act is restrictive ; and following the plain course of reasoning pursued by Mr. Justice

JOHNSTON in *Freeland v. Stillman*, supra, it would seem that the inclusion in the title of certain *quasi* corporations is inconsistent with the contention that another class of the same kind not mentioned is included in the phrase "municipal corporations." An act of the Legislature should not, however, be held unconstitutional upon a mere doubt, but only when it cannot be supported upon any fair and legitimate line of argument; and this consideration is strengthened by the long time that this act has remained unchallenged on our statute books, and the important rights supposed to have accrued under it and which should not be disturbed except for weighty reasons. I am therefore constrained to yield my assent, although other statutes have been upon slighter grounds condemned by this Court as enacted in violation of section 16 of article 2 of the Constitution.

In the second point of the syllabus I fully concur.

ALLEN, J. (dissenting). I concur in holding the title of the act sufficient to include municipal townships, but dissent from the proposition that the act of 1879 authorizes the issuance of negotiable bonds. Neither the word "negotiable" nor any of its synonyms is to be found in the act. The right of the plaintiff to recover in this case depends entirely on the negotiability of the bonds, there being no contention that the original bonds issued in aid of the Sugar-Mill Company were valid. The rule of law rendering the private maker of negotiable paper liable for the full face of it in the hands of a *bona fide* purchaser for value, even though he in fact received no consideration for its execution, is often exceedingly harsh, and is frequently invoked to perpetrate a fraud. It is still more harsh to impose a burden on the

tax-payers, who have taken no part in the execution of written instruments, to pay that for which they have received no benefit in return; and the courts have generally held that, to authorize public officers to execute negotiable instruments in the name of a township or other political subdivision of the state, and thereby impose on the public a burden of debt wrongfully and illegally and without benefit to the public, there must be explicit legislative authority. In the case of *Merrill v. Monticello*, 138 U. S. 673, Mr. Justice LAMAR in delivering the opinion of the Court quotes with approval the language of Chancellor KENT, as follows:

"The modern doctrine, is to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any other. The Supreme Court of the United States declared this obvious doctrine and it has been repeated in the decisions of the state courts. . . . As corporations are the mere creatures of law, established for special purposes, and derive all their powers from the acts creating them, it is perfectly just and proper that they should be obliged strictly to show their authority for the business they assume, and be confined, in their operations, to the mode and manner and subject-matter prescribed."

In *Hill v. Memphis*, 134 U. S. 198, Mr. Justice FIELD said:

"The inability of municipal corporations to issue negotiable paper for their indebtedness, however incurred, unless authority for that purpose is expressly given or necessarily implied for the execution of other express powers, has been affirmed in repeated decisions of this court."

And in *Brenham v. German American Bank*, 144 U. S. 173, it was held:

"Power in a municipal corporation to borrow money

not being nugatory although unaccompanied by the power to issue negotiable bonds therefor, it is easy for the Legislature to confer upon the municipality the power to issue such bonds ; and, under the well-settled rule that any doubt as to the existence of such power ought to be determined against its existence, it ought not to be held to exist in the present case.''

See also the dissenting opinion of Judge CALDWELL in the case of *West Plains Tp. v. Sage,* 69 Fed. Rep. 952, cited in support of the opinion of the Court in this case.

The act does not expressly authorize negotiable bonds to be issued. What necessity then requires the Court by construction and implication to confer such power? Are not purchasers fairly dealt with if they are allowed to collect bonds rightfully and lawfully issued? What necessity is there for going further and saying that the law implies power, as was attempted in this case, to create a debt without lawful consideration? There is much in the act indicating that the Legislature did not intend that negotiable bonds should be issued and placed on the market, imposing an absolute liability whether with or without a valid consideration. The bonds are to be issued only to the holder of the prior indebtedness in pursuance of a compromise agreed on, and on the delivery and cancellation of the evidences of the prior debt. He, of course, has full knowledge of everything affecting the validity of the bonds. It is with him, and him alone, that the township deals in making the exchange. A purchaser from him, of course, might not have full knowledge concerning the original transaction ; but section 4 of the act requires the County Clerk to keep a record of all bonds issued in the county under the act, showing the date, number and

amount thereof, to whom and on what account issued, and requires also a register of the number, amount and date of issue of the canceled obligations. From these records and the inquiries they suggest, a purchaser might readily ascertain whether the refunding bonds were issued for a valid indebtedness or not. He who invests his money in such securities ought to have a motive for inquiring into the reason for the issuance of them. The attention of the taxpayers is not challenged to the transaction, and no good reason exists for holding them to the exercise of diligence in protecting their rights. They are not parties in any sense to the transaction between the original payee of the bonds and the purchaser from him. A debt of the taxpayers ought not to be created by a transaction between strangers, merely because one of them advances his money in reliance on his own ignorance concerning the consideration of the securities he purchases.