DENNIS D. DOTY, *Appellant*, v. GARFIELD TOWNSHIP, *Appellee.* •

No. 17,848.

SYLLABUS BY THE COURT.

TOWNSHIP BONDS—*Refunded—Interest in Default—Bona Fides of Purchaser.* The testimony tended to show that when the plaintiff purchased the refunding bonds and coupons attached, he was assured by the seller that the bonds were valid; that he ascertained that after their issuance a tax had been levied by the township for two successive years to pay the interest; that judgments had been recovered on others of the same issue, and he was advised by counsel that the bonds were valid; that when he purchased, the interest had been in default for seventeen years, but he had no knowledge of any infirmity in the principal obligations, which contained all the necessary recitals, and which the auditor of state had certified were regu-

larly and legally issued; that owing to a question as to who was required to make the levy, and in view of the fact that the county and township had been compromising their bonded indebtedness, he understood that he might be compelled to put in judgment or compromise the paper, for which he paid about 25 per cent of the total principal and interest. *Held*, that the question of his *bona fides* should have been submitted to the jury.

Appeal from Finney district court. Opinion filed June 7, 1913. Reversed.

*W. R. Hopkins*, and *Richard J. Hopkins*, both of Garden City, for the appellant.

*Albert Hoskinson, R. W. Hoskinson*, both of Garden City, and *Frank Doster*, of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: In April, 1909, the plaintiff, Doty, purchased eight Garfield township bonds. These were part of a series of refunding bonds dated November 12, 1890, the obligations thereby taken up having consisted of bonds issued in aid of a sugar company, and $1000 of township warrants. This action was on certain coupons. Doty testified that he bought in good faith after being advised by some of the counsel now representing each of the parties here that the bonds were valid, and after learning that a tax to pay interest had been levied for two successive years, and also that two judgments had been procured on other refunding bonds of the same issue. These instruments were duly registered and contained all the necessary recitals. The auditor of state had also certified that they were regularly and legally issued and that the signatures thereto were genuine. The county attorney had placed on file in the auditor's office a letter dated November 19, 1890, stating that the former objections to their issuance had been overcome by the "building in said Township," to which letter was appended a certificate

of it truthfulness by the clerk of Garfield township. It was shown by the defendant that the plaintiff bought the bonds for about 25 per cent of their face value and accrued interest; that the seller understood the purpose for which the bonds were issued and that Doty bought with knowledge that the interest had been in default for seventeen years. At the close of the testimony the court directed a verdict for the defendant, and the plaintiff appeals.

Assuming that the township had no authority to issue bonds to aid a private enterprise, still it could so estop itself as to innocent purchasers by refunding, by recitals and payment of interest or other acts of recognition that it could no longer deny liability. (*Rathbone v. Hopper,* 57 Kan. 240, 45 Pac. 610.) It is claimed by the defendant that the default in interest shown by the past due coupons was in itself, as a matter of law, sufficient to charge the purchaser with notice of the defense to the bonds, as the trial court instructed. Certain state decisions are cited in support of this contention, but the state courts are not in accord, and authorities both ways may readily be found. *Parsons v. Jackson,* 99 U. S. 434, referred to by counsel, involved instruments which had been seized and carried away before delivery, and apparently before being entirely filled out, and it was held that their uncertainty as to amount and as to place of payment were sufficient to cause their integrity to be questioned, and it was said:

"The presence of the past-due unpaid coupons was itself an evidence of dishonor, sufficient to put the purchaser on inquiry." (p. 440.)

The price paid was also mentioned in connection with all the other matters, which, taken together, were held to be *prima facie* inconsistent with a valid title, and hence the report of the master on all the evidence was confirmed. In *Cromwell v. County of Sac,* 96 U. S.

46—89 KAN.

51, involving an action upon four bonds for $1000 each and four $100 interest coupons attached to them, which coupons were past due and unpaid when purchased by the plaintiff, it was argued that negotiable paper is dishonored by any breach of the engagement which it imports, and that past due coupons attached to the bonds in question were notice to the purchaser that the paper was dishonored. On this question the circuit court had divided, and the supreme court, speaking through Mr. Justice Field, said:

"The nonpayment of an instalment of interest when due could not affect the negotiability of the bonds or of the subsequent coupons. Until their maturity, a purchaser for value, without notice of their invalidity as between antecedent parties, would take them discharged from all infirmities. The nonpayment of the instalment of interest represented by the coupons due at the commencement of the month in which the purchase was made by Clark was a slight circumstance, and, taken in connection with the fact that previous coupons had been paid, was entirely insufficient to excite suspicion even of any illegality or irregularity in the issue of the bonds. . . . As with other negotiable paper, mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser. That result will only follow where there has been bad faith on his part. . . . The interest stipulated was a mere incident of the debt. The holder of the bond had his option to insist upon its payment when due, or to allow it to run until the maturity of the bond; that is, until the principal was payable. Many causes may have existed for a failure to meet the interest as it matured, entirely independent of the question of the validity of the bonds in their inception. The payment of previous instalments of interest would seem to suggest that only causes of a temporary nature had prevented their continued payment. If no instalment had been paid, and several were past due, there might have been greater reason for hesitation on the part of the purchaser to take the paper, and suspicions might have been excited that something was wrong in issuing it.

Doty v. Garfield Township.

All that we now decide is that the simple fact that an instalment of interest is overdue and unpaid, disconnected from other facts, is not sufficient to affect the position of one taking the bonds and subsequent coupons before their maturity for value as a *bona fide* purchaser. (*National Bank of North America v. Kirby*, 108 Mass. 497.)   To hold otherwise would throw discredit upon a large class of securities issued by municipal and private corporations, having years to run, with interest payable annually or semiannualy.   Temporary financial pressure, the falling off of expected revenues or income, and many other causes having no connection with the original validity of such instruments, have heretofore, in many instances, prevented a punctual payment of every installment of interest on them as it matured; and similar causes may be expected to prevent a punctual payment of interest in many instances hereafter.   To hold that a failure to meet the interest as it matures renders them, though they may have years to run, and all subsequent coupons dishonored paper, subject to all defenses good against the original holders, would greatly impair the currency and credit of such securities, and correspondingly diminish their value.   We are of opinion, therefore, that Clark took the two bonds in suit and the subsequently maturing coupons as a *bona fide* purchaser, and as such was entitled to recover upon them, whatever may have been their original infirmity." (pp. 57, 58.)

This rule has been referred to and followed in *Railway Co. v. Sprague*, 103 U. S. 756, 762, in *Thompson v. Perrine*, 106 U. S. 589, 592, and in *Morgan v. United States*, 113 U. S. 476, 502.   In the Thompson case it was contended that the coupons in suit being detached from the bonds and overdue when purchased were dishonored and therefore not negotiable.   In response to this it was said:

"This position can not be sustained.   It is an immaterial circumstance that the coupons, when purchased by Perrine, were detached from the bonds.   And the bonds not having then matured, the coupons, though overdue, had not lost the quality of negotiability by the law merchant.   This result must follow from the prin-

ciples announced in *Cromwell v. County of Sac,* 96 U. S. 51." (p. 592.)

*Trask v. Jacksonville &c. Railroad Co.,* 124 U. S. 515, is also cited, which involved a purchase at auction of bonds which had been running ten years or more and no interest had ever been paid. The instruments were state bonds, and it was said that the mere fact that no interest had ever been paid furnished the strongest presumptive evidence that they were dishonored. The plaintiff, who took under this purchaser, was held to be the agent of those who were engaged in perpetrating a fraud between the railroad company and those employed by them to get the bonds to London so that a large part of the proceeds could be applied to a payment of the personal debts of one of the guilty parties. It was said in the opinion, however, that the only question disputed was whether the purchaser in law and in fact occupied the position of a *bona fide* holder and "that is substantially a question of fact only, and it presents itself in a double aspect." (p. 516.) It was also said that when the contract was made fraud and illegality in the original issue of bonds had become notorious and that it was impossible that the purchaser, situated as he was, could have been ignorant of the facts.

Doty testified that he had no notice or knowledge of any defect or any information whatever that any defense would be made to the bonds; that his vendor assured him that there was no question but that they would be paid and that they were all good; that he understood that on account of conditions being such that taxes had not been levied because there was a question as to who should make the levy, it might become necessary to put the bonds and coupons in judgment, and that there possibly would be a necessity for a compromise, as he had heard that the county and township had been compromising their bonded indebtedness. This, together with the fact that interest on the refunded

issue had been levied for two years, that other bonds of
the same issue had been recovered upon in court, and
the advice of counsel already referred to that these
bonds were valid, does not leave the matter resting
solely on the question of past due coupons, but pre-
sents a situation which, within the principle of the
federal decisions referred to, was one for the jury to
pass upon.

Sections 59 and 60 of the negotiable instruments act
(Gen. Stat. 1909, §§ 5305, 5306) are invoked. These
sections, so far as applicable here, provide that a holder
in due course is one who became the holder before the
instrument was overdue, and that when such instru-
ment, payable on demand, is negotiated an unreason-
able length of time after its issue the holder is not
deemed a holder in due course. Neither the bonds nor
the coupons were payable on demand, and the bonds
when purchased were not yet due and would not be for
nine years. True, the coupons were overdue, and if they
are thereby to be considered demand obligations under
section 14 (Gen. Stat. 1909, § 5260) then ordinarily the
question of reasonable or unreasonable length of time
they can remain due without imparting notice of dis-
honor would be one of fact for the jury.

A decision of the supreme court of New York was
introduced in evidence for the purpose, as then stated,
of showing that as the bonds were made payable at the
fiscal agency in New York, they thereby became New
York contracts so far as the law of *bona fide* ownership
is concerned; and as stated in the brief, for the pur-
pose of showing that the common law of that state is
the same as that of Kansas, and it is now suggested that
this was hardly necessary, as in the absence of proof it
would be presumed to be the same. It would seem,
therefore, that the controversy is submitted for de-
termination under the law of this state, our views of
which have already been indicated. It is therefore not

necessary to notice the objection of the plaintiff that the New York law was not pleaded and that the decision introduced was not rendered by a court of last resort.

The action of the trial court in directing a verdict was erroneous, and the judgment is reversed and the cause remanded for further proceedings in accordance herewith.