# THE STATE ex rel. KINDER v. LITTLE RIVER DRAINAGE DISTRICT, Appellant.

### Division Two, December 31, 1921.

1. **DRAINAGE DISTRICT: Effects of Water: Purpose of Act.** The purpose for which a drainage district might be formed under the Acts of 1905 and 1913 was the same. The words "from the effects of water" used in both necessarily include every effect of water.

2. **———: Money-Making Corporation.** A drainage district organized under Article 1 of Chapter 41, Revised Statutes 1909, is not a money-making corporation, nor can it engage in money-making enterprises, nor raise money for any purpose except to carry out the primary purpose of its organization, which was to drain and protect the lands included therein from the effects of water. It is in no sense a private or voluntary corporation.

3. **———: Municipal Corporation.** A drainage district is a public corporation, and a municipal corporation in about the same sense that a school district or township or county is. It has power to levy benefit assessments, which are enforced contributions to the public welfare, and the moneys collected by such assessments are to be used for a public purpose and no other.

4. **———: ———: Taxation: Exemption.** Under Section 6 of Article X of the Constitution exempting the property of "counties and other municipal corporations" from taxation, the properties of a drainage district are not taxable. The words "other municipal corporations" mean other corporations of the same general character as counties, which are not municipal corporations in the strict sense, but are in the broader sense, and corporations of like character, such as drainage districts, come within their meaning.

5. **———: Holding Basin: Taxation: Exemption.** A holding basin, constructed by a drainage district on appropriated land and necessary to store surplus water in flood time, although consisting of large tracts devoted to such purpose, is not taxable. And if it is all subject to overflow, the fact that at certain times a part of it does not overflow but can be cultivated, does not subject it to taxation, for the propriety of acquiring it to prevent embarrassment by its belonging to other persons still remains, as does the duty of the district to husband its resources in that way and to obtain revenue from it.

Appeal from Bollinger Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED.

*Oliver & Oliver* for appellant.

(1)  The defendant drainage district is a public corporation of the State of Missouri.  Laws 1905, p. 192, sec. 8253; Secs. 5498, 5499, R. S. 1909.  (2)  In addition to the statutory enactment creating the district as a public corporation this court has repeatedly held that such a drainage district is a political subdivision of the State—is a governmental agency, and in no sense a private corporation; that it is a public corporation "as much as the city of St. Louis or the city of Hannibal." Morrison v. Morey, 146 Mo. 543, 561; State ex rel. v. Drainage District, 269 Mo. 444, 458; Land & Stock Co. v. Miller, 170 Mo. 240, 253; Drainage District v. Turney, 235 Mo. 80, 90; State ex rel. v. Taylor, 224 Mo. 290, 469; Wilson v. Drainage District, 257 Mo. 266, 286.  (3)  Since the appellant is a public corporation—a political subdivision of the State—a governmental agency, and in no sense a private corporation and as clearly a municipal corporation as the cities of the State, its property is exempt from taxation.  Sec. 6, Art. 10, Mo. Constitution; Secs. 11335, 12753, R. S. 1909.  (4)  The Legislature never intended that the property acquired by the drainage districts should be taxed.  There is no power granted the drainage district to raise money to pay taxes.  There is no provision in the entire drainage law which authorizes the levying of an assessment or tax to pay taxes.  The only purposes for which a drainage district can levy an assessment is to secure funds to pay the cost of the drainage works and improvements, plus the actual expenses of organizing the district and the proper working and administrative expenses and damages in the completion of said works and improvements.  Secs. 5516, 5519, R. S. 1909.  There is, therefore, a plain, positive limitation up-

on the board of supervisors of the drainage district limiting the purposes for which it may levy a tax on the lands in the district. State ex rel. McWilliams v. Drain. Dist., 269 Mo. 463. (5) It may be conceded that the general rule as announced in Missouri is that tax exemption should be strictly construed, but this rule does not apply to corporations performing a public service. State ex rel. v. Trustees William Jewel College, 234 Mo. 308; Ross v. Railroad, 111 Mo. 25; Westerman v. Lodge, 196 Mo. 709. (a) It has been repeatedly held that the subject-matter, policy and purpose of the act must always be taken into consideration. Spitler v. Young, 63 Mo. 44; Ross v. Railroad, 111 Mo. 26; State ex inf. v. Railroad, 238 Mo. 614; Craig v. Railroad, 248 Mo. 278. (b) The legislative intent is one of the cardinal principles. It must always be looked to and effect given to the act if possible. State ex rel. v. Forest, 177 Mo. App. 252; Kenney v. McVoy, 206 Mo. 65; State ex rel. v. Gmelich, 208 Mo. 159. (c) Statutes *in pari materia* are to be read and interpreted together. They are to be treated as embodied in one section and considered together in order to elucidate the intent of the Legislature, although they are found in different acts. State v. Ebbs, 89 Mo. App. 98; State v. Klein, 116 Mo. 263; Macke v. Byrd, 131 Mo. 690; Strottman v. Railroad, 211 Mo. 251. (d) It is both permissible and proper to take into consideration the general construction placed upon this section by the collectors and landowners of the district. State ex rel. v. Trustees, 234 Mo. 318; Westerman v. Lodge, 196 Mo. 709; Sedalia ex rel. v. Smith, 206 Mo. 364; Barber Paving Co. v. Merservey, 103 Mo. App. 194.

*W. K. Chandler* and *Charles G. Revelle* for respondent.

(1) Although drainage corporations render a secondary and incidental, or quasi-public service, they are organized and operated primarily and principally for the benefit of their stockholders, the benefited landowners,

270     SUPREME COURT OF MISSOURI,

State ex rel. Kinder v. Little River Drain. Dist.

and not for purely public governmental purposes. Art. I, chap. 28, R. S. 1919; State ex rel. v. Oliver, 273 Mo. 537; Ten Eyck v. Canal Co., 18 N. J. Law, 200; 7 R. C. L. pp. 40, 41, 42. (2) Such corporations possess only the power to improve local property at the expense of the benefited owners. They possess no police power, nor power to tax, nor to legislate, nor to conduct a local civil government. They are not the direct representative of the public at large, and the public at large, as distinguished from the benefited landowners, has no voice in their creation, management or control. Their right to organize and operate is not dependent upon considerations of the public welfare, but upon financial benefits to be derived by individual property owners. They are not municipal corporations, nor other public governmental agencies, and all of their property is subject to taxation. Sec. 6, Art. X, Mo. Constitution; Sec. 13752, R. S. 1919; Heller v. Stremmel, 52 Mo. 309; In re Werner, 129 Cal. 567; Irrigation Dist. v. Peterson, 4 Wash. 147; Secs. 1, 3, 4, 9, 10, Art. X, Mo. Constitution; Houck v. Drainage Dist., 248 Mo. 383; Embrie v. Road Dist., 257 Mo. 593; State ex rel. Oliver v. Drainage Dist., 273 Mo. 537; State v. Henry County, 115 Mo. 557; Reney v. Cape Girardeau, 255 Mo. 517; Morrison v. Morey, 146 Mo. 564; Drainage District v. Ry. Co., 266 Mo. 68; Drainage District v. Bates County, 279 Mo. 78; Sec. 7, Art. IX, Mo. Constitution; Oleary v. Water Commrs., 79 Mich. 281; County v. Company, 95 N. W. 340; Dunn v. Revenue Court, 85 Ala. 144; City v. Commonwealth, 84 Pa. 487. (3) The lands owned by appellant and not used for rights of way or other legitimate drainage purposes are, for other and particular reasons, subject to taxation. State ex rel. v. Board of Trustees, 175 Mo. 61; State ex rel. v. Casey, 210 Mo. 235; State ex rel. v. Y. M. C. A., 259 Mo. 233; State ex rel. v. McGurn, 187 Mo. 238; Fritterer v. Crawford, 157 Mo. 51; Lodge v. Crawford, 157 Mo. 356; B. P. O. E. v. Koeln, 262 Mo. 444; St. Louis v. Wenneker, 145 Mo. 230; Kansas City v. Medical College, 111 Mo. 141. (4) Exemptions from taxation exist only when expressed in explicit terms, and

when the law invoked to show the exemption is capable of any other rational construction the exemption cannot exist. It will never be presumed nor deducted by implication that this attribute of sovereignty has been waived. Mullens v. Cemetery Assn., 239 Mo. 681; Fritterer v. Crawford, 157 Mo. 51; State ex rel. v. Casey, 210 Mo. 235; Lodge v. Koeln, 262 Mo. 444; Railroad v. McGuire, 49 Mo. 490; Railroad v. Cass County, 53 Mo. 17.; State ex rel. v. Board of Equalization, 256 Mo. 455.

WHITE, C.—The suit is to recover the general State and county taxes assessed against real estate owned by the defendant. The petition describes thirty tracts of land aggregating 4,635.66 acres, situated in Bollinger County, and demands judgment for delinquent taxes for the years 1916 and 1917.

The answer set forth facts which, under Section 6, Article X, of the State Constitution, the defendant claims exempts the land from taxation.

On a trial of the cause at the September term of the Bollinger Circuit Court judgment was rendered for the plaintiff enforcing the tax lien, in the sum of $966.62. From that judgment the defendant appeals.

The Little River Drainage District was organized in 1907. It comprises 1136 square miles, in an elongated shape extending approximately north and south parallel with the Mississippi River. It includes a part of Bollinger County on the northwest and extends southward through several counties. Bordering this territory on the north and northwest is a range of hills called the Ozark Hills; flowing down from these hills are several streams including Castor River and Crooked Creek, the waters of which formerly overflowed the lands comprising the district. In order to divert these waters a channel known as the Castor River Diversion Channel was constructed across the north end of the district, extending from the Castor River on the northwest eastward to the Mississippi River. This diversion channel varied in width from sixty-four to one hundred and thirty feet. Along the south

side of this channel was built a levee which averaged eighteen feet in height, was twelve feet wide at the top and eighty-four feet wide at the base. North of the channel and between it and the Ozark Hills was a stretch of land acquired by the company for the purpose of forming what were called detention basins. There were three of these detention basins, the west basin, the middle basin and the east basin. The west basin, which includes the land involved in this suit, was low, flat land, subject to overflow by Castor River and Crooked Creek. The tract is about eleven miles in length, extending east and west, and comprises about ten thousand acres.

The answer of the defendant alleged and the evidence proved that three of the thirty tracts of land against which the State seeks to enforce a general tax lien were wholly within the right-of-way of the headwater diversion channel; thirteen of the tracts were wholly within the west basin, and parts of the remaining tracts were used as the right-of-way of the headwater diversion channel or in the west basin; that the purpose of acquiring the land included in the west basin was for the storage of flood water from the Castor River when the headwater diversion channel was unable to take it off as fast as it flowed in, and that all the tracts of land described in the petition had been acquired and were necessary for the purposes of the district.

In addition to the improvements mentioned the district had built 625 miles of dredge canals.

At the time of the trial the waters of Castor River were being diverted by the headwater diversion channel to the Mississippi River, and land in the west basin was subject to overflow from those waters.

The plaintiff offered evidence to show that part of the land in the west basin had been used for agricultural purposes, the exact amount is not stated. It was estimated by one witness that about eight hundred acres had been used for tillable purposes.

The defendant showed a net loss of over twelve hundred dollars in the income derived from the tracts

Vol. 291]     OCTOBER TERM, 1921.     273

State ex rel. Kinder v. Little River Drain. Dist.

of land which were cultivated in the west basin. There was evidence that all of the land in the west detention basin was low, wet, swamp, covered with swamp timber. The defendant's engineer testified that all of the lands within the basin were subject to overflow and at times were entirely covered at variable depths.

On that evidence the court rendered judgment for the plaintiff, as stated, and the defendant appealed.

I. The question presented for determination is whether the land on which the State seeks to establish a general tax lien is exempt from taxation under Section 6, Article X, of the Constitution, which provides that: "The property, real and personal, of the State, counties and other municipal corporations, and cemeteries, shall be exempt from taxation" etc.

*Purposes of Acts.*

Exemption in almost the same words is provided by Section 12753, Revised Statutes 1919.

The defendant, Little River Drainage District, was incorporated in November, 1907, by the Circuit Court of Butler County, under the Act of 1905, which appears in Chapter 41, Revised Statutes 1909. This act was amended by the Act of 1913 which now appears in Chapter 28, Revised Statutes 1919. The Act of 1913 was made to apply to existing districts by providing that the powers, rights and remedies existing on behalf of a drainage district of this State might "be enforced and made available under the provisions of this act." The change in the amendment of 1913, however, did not materially affect the law applicable to this case.

The Act of 1905, Section 5496, Revised Statutes 1909, provided that a majority of owners in the contiguous body of swamp and overflowed land might "form a drainage district for the purpose of having such lands reclaimed and protected from the effects of water, by drainage or otherwise."

In the amendment of 1913, Section 4378, Revised Statutes 1919, such owners were authorized to form a

291 Mo.—18

drainage district "for the purpose, of having such lands and other property reclaimed and protected from the effects of water, for sanitary or agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit."

The purpose mentioned in the original act is general enough to include the more specific statement in the Act of 1913. "The effects of water" necessarily would include every effect of water, so that the amendment added nothing to the purposes for which a drainage district might be formed.

II.    The Act of 1905 provides for the incorporation of a district, notwithstanding the objections of a minority in interest of landowners in the proposed district, who had a right to their day in court to show cause why their lands should not be "made liable for taxation for draining the same." [Secs. 5497, 5498, 5499, R. S. 1909.]

Corporation.

This statute then provided (Sec. 5507, R. S. 1909) for a board of supervisors and engineers, and defined their powers (Sec. 5513, R. S. 1909) and stated that:

"In order to' effect the drainage, reclamation and protection from overflow of the lands in said district, the said board of supervisors is authorized and empowered to clean out, straighten, widen, change the course and flow, alter or deepen any ditch, drain, river, water course, pond, lake, creek, bayou or natural stream in or out of said district, or to fill," etc., . . . "in order to turn the flow and direction of any volume of water in or out of said district, or to concentrate the flow of water in or out of said district, so as to protect, drain and reclaim the lands in said district."

The board was further authorized to "construct and maintain main or lateral ditches, canals, levees, dams, sluices, reservoirs, holding basins and floodways in or out of said district," etc. And "to hold, control and acquire, by donation or purchase, and if need be, condemn any real estate, easement, railroad right-of-

way, sluiceway, reservoir, holding basin or franchise in or out of said district," etc.

The act then provided for the appointment of commissioners for the assessment of benefits and damages to the real estate affected by the plan of drainage. [Secs. 5514, 5515 and 5516, R. S. 1909.] All assessments were to be made "on the basis of benefits derived and secured by reason of the construction of said improvements and works in affording drainage," etc., and the board of supervisors was required to levy a tax on the lands in said district to which benefits had been assessed (Sec. 5519, R. S. 1909) to be . . . "apportioned to and levied upon each tract of land or property in said district in proportion to the benefits assessed and not in excess thereof."

Section 5520, Revised Statutes 1909, provided for an annual installment of taxes to be levied by the board of supervisors and certified to the county clerk, and the county collector was empowered to collect the taxes at the same time that he demanded and collected the state and county taxes on the same properties.

The taxes to be assessed (Sec. 5519, R. S. 1909) were to be "equal in amount to the cost of such drainage works and improvements as estimated by the aforesaid commissioners, plus the actual expenses of organizing said district, the probable working and administrative expenses and damages (as estimated by the board of supervisors) in the completion of said works and improvements and the carrying out of the objects of said district."

It is insisted by the respondent that the drainage district is organized and operated primarily and principally for the benefit of its stockholders, because it possesses no police power and that it is not a "municipal corporation" within the meaning of the constitutional provision quoted; therefore, its lands are subject to taxation.

From the statutes quoted above it will be seen that a drainage district must include land within certain con-

tiguous territory; that the purpose for which it is incorporated is to protect it from the effects of water, and only swamp or overflowed lands, or lands subject to overflow, may be included in a drainage district. The taxes to be assessed should be equal in amount to the cost of such drainage works plus the actual expense of organizing the district, and administration expenses and charges, "*and the carrying out of the objects of said district.*" It is plain that the "object of said district" was not to engage in a commercial enterprise, but to protect the land from the injurious effects of water. The only benefit to the landowners in the district would be the incidental increase in value of their land on account of its cultivation and the superior conditions created as to health, etc. The statute could not be tortured into a construction to the effect that any "of the objects of the said district" was to make money, or to acquire, *as a corporation,* any property whatever, money, or other means for speculative or commercial purposes. The enhancement in the value of property in the district was incidental and individual. The property acquired by the corporation for its purposes was not affected by such rise in values. The only property which the corporation could acquire was as set forth in the statute, such property as was absolutely necessary for drainage purposes, for rights of way, ditches, holding basins, etc. The only way the corporation had of raising money for the purposes stated was by the levy and assessment of benefits against the land. The drainage district could not engage in a money-making enterprise of any kind, nor raise any money for any purpose except to carry out the primary object of the district; that is, to drain and protect the land from the effects of water.

III. The statute also shows certain features in a drainage district not possessed by any private corporation. So far as the lands are concerned, persons owning land in the district to be organized, if they were in the minority, could be forced into the district whether they desired it or

Public Corporation.

not. A private corporation has no such power; it is only voluntarily that one may become a stockholder. The corporation through its board of supervisors had the power to levy special taxes which is purely a governmental function.

The courts of this State have in many cases considered the drainage law and defined the character of a drainage district. The leading case is Morrison v. Morey, 146 Mo. 543. In a opinion by MARSHALL, J., l. c. 560 and 561, it was held that "a levee district [which under the law as it then existed was very similar in purpose and character to a drainage district] constitutes a political subdivision of the State" and as such "exercises the prescribed functions of government in the district."

Further, speaking of the importance of allowing the exercises of such authority, as provided, in order to prevent diseases, the court said at l. c. 563: "This law would be unconstitutional if its only purpose and effect was to improve the value of the lands of the persons in the district, but such is not the only object of the law."

The opinion then goes on to say that the courts take judicial notice of the injurious effects of water and that it was a proper case for governmental interference *under the police powers of the State.*

That case has been cited, approved and quoted in many later cases. It has been held repeatedly that drainage districts are public corporations and political subdivisions of the State with certain governmental functions. [Carder v. Drainage District, 262 Mo. l. c. 556; Drainage District v. Turney, 235 Mo. l. c. 90; Levee Dist. No. 1. v. Railroad, 240 Mo. l. c. 630; Land & Stock Co. v. Miller, 170 Mo. l. c. 253.] Such drainage districts with their canals and ditches are devoted to public uses. [State ex rel. v. Drainage District, 269 Mo. l. c. 458; State ex rel. v. Drainage Dist., 271 Mo. l. c. 435-436.]

It was held in the Morey Case, supra, that the benefits assessed against the property in such a district is not a tax in the strict sense of the term, and in later cases

278     SUPREME COURT OF MISSOURI,

State ex rel. Kinder v. Little River Drain. Dist.

it has been held that it is not like a general tax and not within the constitutional limitations upon the rate of taxation. Nevertheless, the power to levy local assessments is referable to the *taxing power*. [Construction Co. v. Ice Rink Co., 242 Mo. l. c. 256. and cases cited.]' The supervisors of any drainage district in levying assessment benefits exercise a special governmental function; a power which could only be exercised by the sovereign State itself, or through some instrumentality of the State.

IV. The respondent asserts, notwithstanding a drainage district is a public corporation invested with certain power and functions exercised only by the State, that it is not a "municipal corporation" within the meaning of the Constitution providing for exemptions. Dillon in his "Municipal Corporations," (5 Ed.) vol. 1, sec. 32, defines a "municipal corporation." Strictly construed the term applies only to cities which exercise certain legislative functions and other powers incident to such a corporation. Dillon then proceeds: "The phrase 'municipal corporation' is used with us in general in the strict and proper sense just mentioned; but sometimes it is used in the broader sense that includes also public or *quasi*-corporations, the principal purpose of whose creation is as an instrumentality of the State, and not for the regulation of the local and special affairs of a compact community."

The following appears in 28 Cyc. pp. 118 and 119: "A strict definition [of municipal corporation] impliedly excludes parishes, counties, townships, and districts, which are almost municipalities;" and it defines public corporations as (Id. 129) "including counties, townships, school-districts, drainage districts, irrigation districts," etc., and says: "Such bodies, although not 'municipal corporations' nor municipalities in the proper sense, must be construed as falling within such terms in a constitution, statute, or other instrument, if such appears to be the intention." [28 Cyc. pp. 130-31; also, 19 R. C. L. p. 696.]

Vol. 291]        OCTOBER TERM, 1921.        279

State ex rel. Kinder v. Little River Drain. Dist.

The rules of law governing the dissolution of municipal corporations have been held to apply to drainage districts. [People v. Niebruegge, 244 Ill. 1. c. 86-87; People v. Spring Lake Dist., 253 Ill. 1. c. 494.] A school district has been held to be a municipal corporation within the meaning of certain constitutional limitations. [Board of Education v. Board of Education, 78 N. Y. S. 522; Curry v. District Township of Sioux City, 62 Iowa, 102; Winspear v. District Township of Holman, 37 Iowa, 542.] So of a sanitary district. [People v. Nelson, 133 Ill. 1. c. 579.] A township, while not a municipal corporation in the same respects as cities, in a broader sense, and in common usage, is included within the meaning of a statute relating to municipal corporations. [Rathbone v. Hopper, 57 Kan. 240.] Also, counties. [Morse v. Granite County, 119 Pac. (Mont.) 1. c. 289.; People v. Board of Supervisors, 91 N. Y. S. 949; Kumpe v. Bynum, 48 So. (Ala.) 55.]

In two early cases, one of which is cited by respondent here, this court seems to have taken a contrary view. It was held in Heller v. Stremmel, 52 Mo. 309, that the Board and President of Directors of the St. Louis Public Schools was not a municipal corporation in the sense of a certain statute; also in case of State ex rel. Chouteau, et al. v. Leffingwell, et al., 54 Mo. 458, this court, in an *obiter* statement, held that the definition "municipal corporation" did not include such a district as a county school, nor road district. However, so far as we can discover, those cases have not been cited since their rendition, while later decisions of this court have held explicitly that drainage districts are municipal corporations. In Wilson v. Drainage District, 257 Mo. 266, 1. c. 286, this is said: "Both the prior drainage district and the present defendant were *municipal corporations* under our law, as is well settled by the Supreme Court decisions," citing cases.

In the case In re Birmingham Drainage District, 274 Mo. 1. c. 151, it is said: "And these drainage districts, when so formed, exercise the granted powers within their

territorial jurisdiction as fully, and by the same authority, *as municipal corporations* of the State exercise the powers vested by their charters," and among the powers mentioned is the power of taxation, which is declared to be a legislative function.

In the case of Winkleman v. Levee District, 171 Mo. App. l. c. 56-7, it is said "that drainage districts incorporated under the statutes such as those involved here are public corporations of the State, *municipal in character*, and resembling in their attributes townships and school districts, is settled by the Supreme Court decisions to that effect."

This case is cited by this court in Wilson v. Drainage District, 257 Mo. 266, supra.

In State ex rel. v. Taylor, 224 Mo. l. c. 468, it was said that "a drainage district is a public and not a private corporation," and l. c. 469, "as much a public-corporation as were the cities of St. Louis and Hannibal."

In a late case, State ex rel. v. Oliver, 273 Mo. l. c. 542, this court in qualifying the statement in the Morey Case, supra, said that the money raised in a drainage district by assessment is not a tax, and used this expression: "Yet it is like a tax in that it is imposed under an authority derived from the Legislature, and is an *enforced contribution to the public welfare*, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax in that it must be levied for the *public purpose*, and must be apportioned by some reasonable rule among those upon whose property it is levied."

True, it has been held that a drainage district is not a subdivision of the State within the meaning of that section of the Constitution giving jurisdiction in certain cases to this court, but that exclusion applies to cities like Kansas City as well. Cases involving the question of jurisdiction of this court are not applicable here.

The language of Section 6, Article X, of the State Constitution shows it was intended to apply the exemption from taxation to property of such corporations as

drainage districts. Counties are not municipal corporations within the strict definition of the words as shown by the authorities above cited, (28 Cyc. p. 126; Dillon on Municipal Corporations, sec. 32) but are classed with townships, school districts and other districts as municipal corporations in "the broader sense," as falling within such terms in a constitution or statute.

Section 6, Article X, of our Constitution exempts the property of "counties and other municipal corporations," meaning of course, other corporations of the same general character as counties, which are not municipal corporations in the strict sense, but in the "broader sense," so as to make the constitutional provision applicable. A county is thus declared to be a municipal corporation, and corporations of like character, including drainage districts, must be held to come within the language of Section 6—"other municipal corporations."

From all the above authorities, from the reasoning in the decisions defining the functions and explaining the powers of a drainage district, and from the plain intent of the Legislature in authorizing the formation of drainage districts, they are municipal corporations within the meaning of that section.

II. The respondent claims that the property affected here is not all used for public purposes, and at least a part of it is subject to taxation.

If the containing basin were necessary to store the surplus water in flood time, then the district was obliged to acquire such land as would be overflowed by such surplus water.

The evidence shows the land described in the petition, except that used in the right-of-way, was acquired for that purpose; strictly the purpose for which the district was formed—to protect the district from the effects of water, and the health, welfare and prosperity of a large community—depended upon the proper maintenance of the facilities thus provided for taking care of the water. It is in evidence that all this land included

Jacks v. Link.

in the petition was subject to overflow. If at times some of the land included in the west basin was not overflowed and could be cultivated that would not affect the propriety of acquiring it to prevent embarrassment by its belonging to other persons. It would be the duty of the district to husband its resources in that way and obtain any revenue it could by the use of such land, and such use would not subject the land to taxation.

The land against which the State seeks to enforce the general tax lien is exempt from taxation. The judgment is therefore reversed. *Reeves, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.