**JOINT SCHOOL DIST. NO. 132 et al. v. DABNEY, Atty Gen.**

No. 18497.   Opinion Filed Oct. 25, 1927.

(Syllabus.)

1. **Municipal Corporations—Construction of Serial Bond Act of 1927—"Municipalities" and "Municipal Corporation."**

Under the provisions of Senate Bill 87, chapter 22, Session Laws 1927, the term "municipalities," as used in the title of said act, and the term "municipal corporation," as used in section 1 thereof, apply to every kind and character of public corporations which are created by statute or the Constitution of the state and which are dependent for their support and maintenance upon taxes imposed and collected.

2. **Schools and School Districts—Held "Municipal Corporations" Subject to Serial Bond Act of 1927.**

By virtue of section 10337, C. O. S. 1921, school districts of the state are made bodies corporate, and as such they are municipal corporations and are subject to the provisions of Senate Bill 87, chapter 22, Session Laws 1927, relating to the issuance and sale of bonds.

3. **Municipal Corporations—Serial Bond Act Not in Conflict With Constitutional Provision as to Public Utility Bonds.**

The provisions of Senate Bill 87, chapter 22, Session Laws 1927, in no manner conflict with section 27, art. 10, of the Constitution of the state, relating to public utility bonds.

4. **Same—Basis for Bidding on Bonds Under Serial Bond Act of 1927.**

A serial bond, under chapter 22, Session Laws 1927, providing for the issuance of such bond by municipalities, is in contemplation of said act a loan of money by the holders of such bond to the corporate body issuing the same. and under section 2 of said act the margin of difference from those offering to purchase such bonds is the rate of interest proposed to be charged for the loan of money by the respective bidders.

Said provision in said act is plain, simple, adequate, and free from ambiguity.

**5. Statutes—Subjects and Titles—Subject-Matter of Section 3 of Serial Bond Act of 1927 Included in Title.**

Section 3, ch. 22, Session Laws 1927, forbids all persons, firms, and corporations who participated in the proceedings authorizing the issuance of such bonds from buying the bonds so issued. This provision of the act is related and cognate to its general title and the purposes of said act; however, section 3 thereof is specifically authorized in the title of said act by the use of the words "and prohibiting any bidder from being interested in a proceedings contract."

Original proceedings in Supreme Court by Joint School District No. 132 in Major and Alfalfa Counties et al. for writ of mandamus to compel Edwin Dabney, Attorney General, as Ex Officio Bond Commissioner, to approve certain bonds. Writ denied.

Warren K. Snyder, for plaintiffs.

Randell S. Cobb, Asst. Atty. Gen., for defendant.

LESTER, J. This is an original action brought in this court to compel by a writ of mandamus the Attorney General, as ex officio bond commissioner of the state of Oklahoma, to approve a certain bond issue in the sum of $2,000, authorized by the voters of the joint school district No. 132, located in the counties of Major and Alfalfa, state of Oklahoma.

The refusal and the reasons given therefor by the defendant to approve said bond issue are shown from a copy of the following letter, which is made a part of the defendant's answer to the petition of the plaintiffs:

"June 3, 1927.

"No. 6529, Joint School District No. 132, Major and Alfalfa Counties, $2,000 Building

"Mr. E. D. Edwards,
    "First National Bank Building,
    "Oklahoma City, Oklahoma.

"Dear Sir:

"The Attorney General, as ex officio bond commissioner of the state of Oklahoma, has examined the bonds and transcript of proceedings had in the above indicated bond issue. The Attorney General respectfully declines to approve the bond issue for the following reason:

"1. The bonds are made to mature $500 on May 3rd in each of the following years: 1932, 1937, 1942, and 1947. This is directly in conflict with the first section of Senate Bill No. 87, enacted by the last Legislature, which provides that such bonds shall be made to mature in equal annual installments, beginning not less than three nor more than five years from their date.

"Very respectfully,
    "For Attorney General:
"Randall S. Cobb,
    "Assistant Attorney General."

The plaintiffs in this case have filed an able and exhaustive brief in which plaintiffs level several specific attacks against the constitutionality of Senate Bill No. 87, chapter 22, S. L. 1927, and commonly referred to as the "Serial Bond Act."

The defendant, as Attorney General of the state, relies upon section 1 of said act as the basis of his refusal to approve said bond issue.

We shall undertake to discuss every proposition presented by the plaintiffs challenging the constitutionality of the said act.

The plaintiffs contend that neither the title to said act nor section 1 thereof is sufficient to embrace or include school districts so as to bring such organizations within the term of municipal corporation; the title to said act being as follows:

"An act providing that all bonds including funding and refunding bonds issued by municipalities shall be made to mature in annual installments beginning not less than three years nor more than five years from their date; prescribing certain regulations as to the amounts and denominations thereof; regulating the sale of bonds and requiring all bond issues aggregating five thousand ($5,000) dollars, or more, to be sold at an advertised sale to the bidder who will pay par and accrued interest for the lowest interest rate bond; prohibiting any person preparing bonding proceedings for compensation from bidding for the bonds, and prohibiting any bidder from being interested in a proceedings contract; and repealing all acts in conflict herewith, and declaring an emergency."

Section 1 of said act is as follows:

"Whenever any municipal corporation, or political subdivision, of the state of Oklahoma, shall vote any bonds or issue any funding or refunding bonds, such bonds shall be made to mature in annual installments, beginning not less than three nor more than five years after their date. Such installments shall be in equal amounts of one hundred ($100) dollars, five hundred ($500) dollars, or one thousand ($1,000), except that the last maturing installment may be for such sum less than two installments as will complete the full issue of such bonds, notwithstanding the necessity of varying the amount thereof to complete the same."

We are here confronted with the propositions whether the term "municipality," as used in the title, or "municipal corporation," as used in section 1 of said act, is sufficiently comprehensive to include school districts of this state within the meaning of said terms.

The plaintiffs in their brief, at page 38, say:

"We are aware that there are some decisions on this question of municipalities on the other side of the question and opposed to our contention, just the same as will be found on nearly every legal question or phase —two sides of decisions, two kinds of decisions—for and against."

In 35 Cyc. 831, it is said:

'It is well settled that school districts and boards of school trustees are quasi corporations, and that, they are public as distinguished from private corporations. But as to whether or not they are municipal corporations, there is considerable conflict of authority; some of the cases holding them to be so, at least for certain purposes, and some of them holding otherwise."

In 43 C. J., p. 73, sec. 12, is to be found this statement:

"There is a want of harmony in the decisions relating to what local subdivisions are embraced by the phrase 'municipal corporations.' There are many public bodies which are not corporations in the full sense, but resemble them in that they have some of the attributes of a corporation, and which are therefore called quasi corporations. Some of these are a most perfect in their organization and scarcely distinguishable from municipal corporations. Others represent the lowest order of corporate life. with few powers and imperfect organization. Between these two extremes are a larger number of districts erected as agencies of government, of divers names and objects, with varying degrees of organization; sometimes styled political, sometimes, public, sometimes civil; including counties, towns, townships, school districts."

Section 10337, C. O. S. 1921, relating to the organization and corporate powers of school districts. reads as follows:

"Every school district organized in pursuance of this article shall be a body corporate. and shall possess the usual powers of a corporation for public purposes by the name and style of school district * * * (such a number as may be designated by the county superintendent of public instruction) * * * county (the name of the county in which the district is situated), state of Oklahoma. and in that name may sue and be sued, and be capable of contracting and being contracted with and holding such real and personal estate as it may come into possession of by will or otherwise, or as is authorized."

So, we here find created by the statute of this state an organization of a body corporate possessing "the usual powers of a corporation for public purposes." Of course their powers are limited by implication as well as by statute to the particular duties and powers extended to school districts. So it may also be said that the powers of cities and towns are also limited in their government, laws and statutes, in that they must be conformable to and not in conflict with the Constitution and laws of this state. And this is true even as to the cities of this state operating under a charter of their own adoption.

We understand, of course, that the early conception of municipal government was that it related to the government of the cities, towns, and villages, but this term has, by usage, becomes enlarged.

"With us this word has a more extensive meaning; for example, we call municipal law not the law of a city only, but the law of a state." 1 Bla. Com. 44.

By section 10337, supra, the state of Oklahoma fixes by law the corporate status of school districts and gives to them "the usual powers of a corporation for public purposes."

In the case of State of Kansas v. James Wilson, 65 Kan. 237, 69 Pac. 172, which involved a criminal prosecution for the violation of the eight-hour law, said statute, in part, is as follows:

"That eight hours shall constitute a day's work for all laborers, workmen, mechanics or other persons now employed or who may hereafter be employed by or on behalf of the state of Kansas. or by or on behalf of any county, city, township or other municipality of said state, except in cases of extraordinary emergency which may arise in time of war or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life," etc.

The court. in syllabus No. 1. in said case, in passing upon the proposition as to whether a school district was a municipality. said:

"A school district is a 'municipality.' within the meaning of chapter 114. Laws of 1891 (Gen. Stat. 1901, sections 3827-3830). known as the Eight-hour Law."

In the case of Curry v. District Township of Sioux City. 62 Iowa, 102. 17 N. W. 195, the court said:

A school district township is properly called a municipal corporation, and its

bonds, issued pursuant to chapter 174 of the Acts of the Fourteenth General Assembly, are authorized by said act."

In the case of People ex rel. Elbert Tibbals v. Board of Education of Port Huron, 39 Mich. 635, the court said:

"The board of education of Port Huron is a municipal corporation distinct from that of the city and its members are not city officers subject to removal by the common council."

In the case of Smith v. School Trustees, 141 N. C. 143, in syllabus No. 4 of the said case, the court there said:

"School districts are public quasi corporations, included in the term municipal corporations as used in article 7, sec. 7, of our Constitution, and so come within the express provisions of section 7, that 'No county, city, town or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, etc.; nor shall any tax be levied, etc., unless by a vote of the majority of the qualified voters therein.' And the principle of uniformity is established and required by section 9 of this article."

In the case of School District No. 7 of Wright County v. J. H. Thompson, 5 Minn. 280 (Gil. 221), the court said:

"A school district is a municipal corporation, created for a special purpose, and its powers expressly limited by statute."

In the case of Board of Directors of Middle Kittitas Irrigation District v. Peterson, 4 Wash. 147, 29 Pac. 995, in commenting upon the words, "no county, city, town, school district or other municipal corporations," found in section 6, art. 8, of the Constitution, the court there said:

"We are forced to the conclusion that every public corporation formed by the state for the purpose of carrying out any of the duties which the state owes to any locality, and which by its terms are made alike applicable to all the inhabitants of the district or locality affected thereby, must be held to be included within the 'other municipal corporations' named in said section."

In the case of Lincoln County v. Brock, 39 Wash. 14, 79 Pac. 477, the court there used the following language:

"For the purpose of general designation, it is not uncommon to use the term 'municipal corporations' in a sense including quasi corporations, to distinguish public or political corporations from those which are termed private. 7 Enc. of Law, 902: Laramie County v. Albany County, 92 U. S. 307, 23 L. Ed. 552: Tippecanoe County v. Lucas, 93 U. S. 108, 23 L. Ed. 822: Mt. Pleasant v. Beckwith, 100 U. S. 524, 25 L. Ed. 699. It is our construction that the words 'any

corporation other than municipal,' as used in section 16, art. 1, of the Constitution, are intended to exclude public or political corporations, as distinguished from private corporations. We are therefore of the opinion that a county in the state of Washington should be considered a municipal corporation, under said section, and for this reason hold that the court did not err in the instruction given."

In the case of Board of County Commissioners of the County of Laramie v. Board of County Commissioners of the County of Albany and Board of County Commissioners of the County of Carbon, 23 L. Ed. 552, the Supreme Court of the United States said:

"Counties, cities, and towns are municipal corporations, created by the authority of the Legislature; and they derive all their powers from the source of their creation, except where the Constitution of the state otherwise provides. Beyond doubt, they are in general, made bodies politic and corporate; and are usually invested with certain subordinate legislative powers, to facilitate the due administration of their own internal affairs, and to promise the general welfare of the municipality. They have no inherent jurisdiction to make laws, or to adopt governmental regulations, nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters, or other statutes of the state."

In the case of Rathbone v. Hopper, County Clerk, et al., 59 Kan. 240, 45 Pac. 610, the court used the following language.

"In the broader sense, and in common usage, the term 'municipal corporations' includes counties and townships. All public corporations, including counties, cities, and townships, are frequently referred to as 'municipalities' and 'municipal corporations,' to distinguish them from private corporations, and it is not uncommon to find them so designated in the state and federal courts, and in the published reports of their decisions. In a very recent case, Chief Justice Horton referred to a township as 'a public municipal corporation'; and the same language is employed both in the syllabus and in the opinion. Riley v. Garfield Tp., 54 Kan. 463, 38 Pac. 560. In 15 Am. & Eng. Enc. Laws, 953, the following definition is given: 'A municipal corporation, in its broader sense, is a body politic, such as a state, and each of the governmental subdivisions of the state, such as counties, parishes, townships, hundreds, New England "towns," and school districts, as well as cities and incorporated towns, villages, and boroughs. Every one of these is properly susceptible of the general appellation.' Here, then, we have in the title a term which, if taken in the broader sense and popular signification, would include townships, and render

the act valid, while, if taken in the more restricted and technical sense, it would render it invalid. What sense shall be imputed to the Legislature, and which interpretation should be given to the term? No one can doubt that the Legislature intended to make a title broad enough to cover the provisions of the act with reference to townships, and this is the more apparent from the amendments made to the act long after the passage of the original act, and after large amounts of township indebtedness had been refunded under its provisions. Laws 1891, c. 163; Laws 1893, c. 113. The obvious intention of the Legislature is entitled to great weight in determining the sufficiency of the title. In Woodruff v. Baldwin, 23 Kan. 494, it was held in a similar case to be more just and fair to say that the Legislature used the title in its broadest sense,—a sense broad enough to include the subject-matter of the act,—rather than to apply the restricted meaning, which would to some extent defeat the legislative purpose."

Section 1, art. 9, of the Constitution of this state, in distinguishing certain classes of corporations from public corporations, has the following provision:

"As used in this article, the term 'corporation' or 'company' shall include all associations and joint stock companies having any power or privileges not possessed by individuals, and exclude all municipal corporations and public institutions owned or controlled by the state; the term 'charter' shall mean the charter of incorporation, by or under which any corporation is formed. The term 'license' shall mean the authority under which all foreign corporations are permitted to transact business in this state."

Section 2 of said act here in question provides, in part:

"When any issue of bonds, except funding or refunding bonds, aggregating five thousand ($5,000) dollars, or more, shall be made or ordered by any county, city, town, board of education, school district, or other political subdivision of the state, the proper officer shall, before selling such bonds, cause at least ten days' notice to be given of the time and place when and where bids therefor will be received."

It thus clearly appears that the Legislature construed the word "municipalities," as contained in the title to said act, as well as the term "municipal corporation," as found in section 1 thereof, to mean county, city, town, board of education, school district, or other political subdivision of the state.

It was clearly the intention of the Legislature to give these terms a broad and comprehensive meaning. Each of the municipalities mentioned in section 2, supra, are dependent for their support and maintenance upon taxes imposed and collected.

No reason existed why the Legislature should confine the benefits of the act in question to the cities, towns, and villages of the state and neglect from its operation all other units and subdivisions of government within the state.

Serial bonds are but an arrangement whereby a corporate body pays off its indebtedness on the "installment plan." When the installment of the principal is paid, it stops interest thereon pro tanto.

No one act of the Legislature will bring a greater fiscal benefit to the people of Oklahoma than the act here in question. It will result in saving to the taxpayers of Oklahoma millions of dollars in interest, remove the necessity of accumulating a large sinking fund to be preserved for a long number of years, and in many instances such funds have been threatened or diminished through unwise and unsafe investment by the holders thereof.

"It is the duty of the court to endeavor to carry out the intention and policy of the Legislature, and, therefore, it will not declare a statute unconstitutional in whole or in part where it is reasonably susceptible of a construction giving it effect in all its parts." 36 Cyc. 1103.

We refuse to follow the definition and distinction of corporations as stated in the case of Honnold v. Board of Commissioners of Carter County et al., 71 Okla. 71, 177 Pac. 71, wherein it is said:

"Cities, towns, and villages are municipal corporations proper, while counties, townships, school districts, road districts, and the like are quasi corporations."

This statement is incorrect so far as it applies to the school districts, for the reason that a school district is by statute of this state made a corporate entity possessing the "usual powers of a corporation for public purposes," limited, however, in its operation to its peculiar duties and powers. This limitation is likewise placed upon corporations of every kind and character, and the term "quasi corporation," so far as it relates to a school district within this state, is erroneous. Its corporate existence is just as complete as that of a city, town, or village.

We have found other authorities in addition to those herein enumerated which hold that the terms "municipality" and "municipal corporation" are more comprehensive than a mere reference to the municipality of city, town, and village.

We also find authorities to the contrary, but in view of the statutes of this state. heretofore referred to, as well as the purpose and intent of the act here involved, we shall follow the rule which permits a broader meaning and effect as applied to "municipalities" and "municipal corporations" rather than that of a narrower construction.

The plaintiffs contend that the act in question is in conflict with the character of bonds that may be issued under section 27, art. 10, of the Constitution of this state; said section being as follows:

"Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section 26 for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for. and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution. sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

The plaintiffs base their argument upon the proposition that said provision has been held to be self-executing and, therefore, there is nothing that the Legislature can or may add.

Of course the Legislature could not change or alter the fixed limitations of said section; it could not extend the 25-year limit on bonded indebtedness issued under said section, nor could it change or alter other specific terms of said section, but in our judgment the Legislature would have the power to provide measures that would protect and better effectuate the operation or said section. It could provide means of safeguarding the money derived from taxes for the purpose of paying the said indebtedness. and in our judgment the provision in the act in question providing for the payment of bonds through the installment system will very largely tend to lessen the danger of losses to this fund.

As we view the act in question. it in no manner conflicts with section 27, art. 10, of the Constitution, but said act does the better vitalize the purposes thereof, in pro-

viding features which are wholly silent in section 27, art. 10, of the Constitution, supra.

It is also contended by the plaintiffs that the act in question does not provide that specifications for bidding shall be certain, direct, and uniform.

Sections 2 and 3 of said act relate to the sale of bonds under certain procedure; however, it is not applicable except where the bonds aggregate $5,000 or more, except as to funding and refunding bonds.

The bonds authorized by the school district in the instant case are fixed at $2,000, and, therefore, would not be affected by section 2 and section 3 of the said act, but the plaintiffs contend that these provisions of said act become material in this case for the reason that if sections 2 and 3 thereof are found to be unconstitutional, it then becomes a question for the court to determine whether the Legislature would probably have enacted section 1 of said act.

Section 2 of said act, in part, provides:

"All bonds shall be sold to the bidder who will pay therefor par and accrued interest, and who shall stipulate in his bid the lowest rate of interest, which such bonds shall bear."

The plaintiffs contend that it does not place the bidder upon an intelligent basis, and cite the case of Flynn Construction Co., v. Leininger et al., by this court, and reported in 125 Okla. 197, 257 Pac. 374

We are fully cognizant of the rule laid down in that case, but do not think it is applicable to the proposition here at issue.

A bid is nothing more nor less than a proposition. A bond issue is nothing more nor less than an obligation of indebtedness.

Under the provision of the act in question the bidder desiring to buy bonds simply states to the municipality offering bonds for sale the amount of interest he will exact if he is the successful purchaser, and under the terms of the said act, of course, a party offering to take the bonds at the lowest rate of interest thereby becomes the successful bidder or purchaser.

The lowest rate of interest offered to be charged by the party seeking the purchase of said bonds constitutes the margin of difference between the successful and unsuccessful bidders.

Section 2 also provides that when said bonds are to be sold, the proper officer shall "cause at least ten days' notice to be given

of the time and place when and where bids therefor will be received."

In our judgment the procedure for the purpose of inviting bids for the sale of bonds as provided by section 2 thereof is plain, simple, and adequate.

Plaintiffs also contend that section 3 of said act is not clearly set out in the title of the same. Section 3 thereof provides:

"No person, firm, or corporation, who shall represent the county, city, town, board of education, school district, or other subdivision of the state of Oklahoma, in the preparation or handling of such bond issue, or the proceedings incident thereto, in any manner, shall be permitted to bid for or become the purchaser of such bonds upon sale thereof, or be interested in any bid submitted at the sale of said bonds, and no bidder shall be interested in any proceedings contract."

The reference in the title of said act as intended to relate to section 3 thereof, reads as follows:

"Prohibiting any person preparing bonding proceedings for compensation from bidding for the bonds, and prohibiting any bidder from being interested in a proceedings contract."

Section 3 of said act is germane to and related to the subject-matter expressed in the general title thereof.

Moreover, the expression in the title, "and prohibiting any bidder from being interested in a proceedings contract," is sufficient to justify the inclusion of section 3 of said act within the purview of section 57, art. 5, of the Constitution of this state, providing that "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

Having disposed of all the objections urged by the plaintiffs against the constitutionality of said act, and finding that the plaintiffs' petition does not state a cause of action against defendant, the writ of mandamus is denied.

BRANSON, C. J., and HARRISON, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 28 Cyc. p. 1576. (2) 35 Cyc. pp. 831 832, 994. (3) 28 Cyc. p. 1576. (4) 28 Cyc. p. 1596. (5) 36 Cyc. p. 1043.