**CITY OF TULSA et al. v. DABNEY, Atty. Gen.**

No. 19696. Opinion Filed Oct. 9, 1928.

M. C. Spradling and Eben L. Taylor, for petitioner.

Randell S. Cobb, for respondent.

LESTER, J. This is an original action filed in this court for the purpose of compelling the Attorney General of this state by writ of mandamus to approve certain bonds authorized by the voters of the city of Tulsa at an election held therein on the 6th day of December, 1927.

Said bonds so authorized were known as "Fire Station and Fire Department Equipment Bonds of Tulsa, Okla., 1927," and being for $115,000 and intended to be used as providing funds for purchasing sites for the construction, improving. and equipping fire stations and purchasing additional equip-

ment for the fire department of the said city of Tulsa.

The Attorney General filed an answer to the petition of the plaintiff in which he states and alleges:

"1. That respondent, as Attorney General and ex officio Bond Commissioner of the state of Oklahoma, declined to approve the $115,000 fire station and fire equipment bonds of the city of Tulsa for the reasons set forth in the letter of the Attorney General addressed to Hon. M. C. Spradling, city attorney, Tulsa, Okla., which letter is attached to and made a part of petitioner's petition in this cause.

"2. That respondent, as Attorney General and ex officio Bond Commissioner of the state of Oklahoma, in declining to approve the bond issue heretofore referred to, took the position that the bond issue had to mature as provided by chapter 22 of the Oklahoma Session Laws of 1927, that is, in equal annual installments beginning not less than three nor more than five years from date, except that the last maturing installment might be for any sum less than two installments. The bond issue was not made to so mature, but matures $7,000 each year, beginning ten years from date, except that the last installment, maturing on September 1, 1953, is for $10,000. The bond issue is dated September 1, 1928, the first maturity being on September 1, 1928."

The sole question before this court is whether the said bonds should be made to mature as provided by chapter 22, Session Laws 1927, or as provided by section 1 of amendment 10, charter of the city of Tulsa.

Section 1 of amendment 10, charter of the city of Tulsa, reads, in part, as follows:

"* * * And, in order to raise means to carry out the same, shall have the power to issue and sell bonds in manner and form provided by law, bearing interest not to exceed six (6%) per centum per annum, maturing in 25 years, and redeemable at will in not less than 10 years; and, whenever any such public improvement shall have been constructed by means derived from the sale of bonds as above provided, it shall be the duty of the city of Tulsa to fix the rates charged for services to the public as near as practicable so as to pay the interest, and not less than three per centum (3%) per annum on the principal of such bonds, in excess of the expenses of maintenance and operation of such public utility."

Under said charter provision the bonds authorized thereunder would have to mature 25 years from date and be redeemable at will not less than ten years from date.

Section 1 of chapter 22 of the Oklahoma Session Laws of 1927, reads as follows:

"Whenever any municipal corporation, or political subdivision, of the state of Oklahoma shall vote any bonds or issue any funding or refunding bonds, such bonds shall be made to mature in annual installments, beginning not less than three nor more than five years after their date. Such installments shall be in equal amounts of $100, $500 or $1,000 except that the last maturing installment may be for such sum less than two installments as will complete the full issue of such bonds, notwithstanding the necessity of varying the amount thereof to complete the same."

Under said section the bonds would have to mature in equal annual installments, beginning not less than three nor more than five years from date, except the last maturing installment may be for any sum less than two installments.

The bonds involved in this case are dated and mature as follows: Said bonds are issued in the denomination of $1,000 each and are dated September 1, 1928, and become due and payable $7,000 each year on September 1st, beginning in 1938, and ending in 1952, and $10,000 maturing on September 1, 1953. The bonds bear interest at the rate of 4½ per centum per annum.

It is the contention of the plaintiff that the bonds so authorized are a matter of purely municipal concern only, and that such proceedings were and are wholly within the charter rights of the city of Tulsa.

On the other hand, the defendant contends that chapter 22, Session Laws 1927, is a statute of general concern to the state, and, therefore, is not superseded by section 1 of the amendment 10 of the charter of the city of Tulsa.

Section 3 (a) of article 18 of the Constitution of the state of Oklahoma provides the procedure for obtaining a charter form of government for cities containing a population of more than 2,000 inhabitants. Said section provides that, after the charter has been adopted by the electors of the city, the Governor shall approve same, "if it shall not be in conflict with the Constitution and laws of this state."

Section 4508, C. O. S. 1921, provides that, when a charter for any city has been framed, adopted, and approved, it shall become in effect supreme, provided, however, that such charter shall be consistent with and subject to provisions of the Constitution and other general laws of the state in relation to cities of the first class.

This court in the case of Walton v. Donnelly, 83 Okla. 233, 201 Pac. 367, said:

"The provisions of the charter of Oklahoma City adopted under the authority of section 3a, art. 18 of the Constitution, and section 539, Rev. Laws 1910, supersede all laws of this state in conflict with such charter provisions, in so far as such laws relate to purely municipal matters.

"Such charter provisions do not supersede the general laws of the state of general concern, in which the state has a sovereign interest, and where the provisions of said charter conflict with the general laws of the state of this character, such laws will prevail."

Again in the case of City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, the court said:

"Section 3a, art. 18, Williams' Ann. Constitution, authorizing cities containing a population of more than 2,000 inhabitants to frame a charter for their own government, not in conflict with the Constitution and laws of the state, reserves to the state a general legislative control in the state over such cities, and the general laws of the state pertaining to any rightful subject of legislation of general public concern, which conflict with any charter provisions of such municipalities, prevail over such charter provisions."

The sole question presented here is, Where a city operating under a charter form of government seeks to issue municipal bonds and the charter of such city conflicts with the statutes of the state relating to the procedure and manner of issuing said bonds, which one of the two procedures must be followed?

Section 26 of article 10 of the Constitution places a limitation of debts over all municipal and political subdivisions of the state; that is, the indebtedness of all municipal corporations and political subdivisions of the state shall not exceed in any year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof voting at an election held for that purpose, and prohibiting any indebtedness to be incurred to an amount including existing indebtedness in the aggregate exceeding five per cent. of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes, previous to the incurring of such indebtedness, and providing, further, that such municipal corporations and political subdivisions of the state shall, before or at the time of incurring such indebtedness, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same.

Section 27 of article 10 of the state Constitution provides that cities and towns, for public utility purposes, may incur an indebtedness beyond the limitation specified in section 26 of article 10 of the Constitution, upon a majority vote of the qualified taxpaying voters of such cities and towns voting at an election held for that purpose. Said section also provides that, before or at the time of incurring the indebtedness, provisions shall be made for the collection of an annual tax, in addition to other taxes provided by the Constitution, sufficient to pay the interest on such indebtedness as it falls due and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same.

Section 28 of article 10 of the Constitution also provides that cities and other subdivisions of the state shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; and third, for the payment of such parts of judgments as such municipalities may by law be required to pay.

Section 29 of article 10 of the Constitution further provides that all municipal bonds shall be invalid unless the same shall have indorsed thereon a certificate signed by the county clerk and the county attorney of the county wherein the municipality or other political subdivision lies, stating that said bonds are issued pursuant to law and within the debt limit.

Section 9699, C. O. S. 1921, sets forth the duty of the county excise board to make levies, and requires the board to separately make and state the rates of levy for current expense purposes and sinking fund purposes, and make levies therefor if any municipality fails to make and submit an estimate as provided by law.

Section 4283, C. O. S. 1921, makes the Attorney General of the state of Oklahoma ex-officio Bond Commissioner of said state.

Section 4284, C. O. S. 1921, defines the duties of said Bond Commissioner and the effect of his certificate. Said section requires the Attorney General, as Bond Commissioner, to prepare uniform forms and prescribe a method of procedure under the laws of the state for the issuance of public

securities or bonds by any municipality or political subdivision thereof. Said statute makes it the further duty of the Bond Commissioner to examine into and pass upon any security so issued, and such security, when declared by the certificate of the Bond Commissioner to be issued in accordance with the forms of procedure so provided, is incontestable in any court in the state of Oklahoma, unless suit thereon is brought in a court having jurisdiction of the same within 30 days from the date of the approval thereof by the Bond Commissioner.

We think it clearly appears from the constitutional and statutory provisions of the state that at all times the state intended to retain complete sovereignty and control of the manner of the issuance of all municipal indebtedness authorized by the several political subdivisions of the state.

In the case of Joint School District No. 132 v. Dabney, Attorney General, 127 Okla. 234, 260 Pac. 486, this court said:

"Section 2 of said act here in question provides, in part:

" 'When any issue of bonds, except funding or refunding bonds, aggregating $5,000 or more, shall be made or ordered by any county, city, town, board of education, school district, or other political subdivisions of the state, the proper officer shall, before selling such bonds, cause at least ten days notice to be given of the time and place when and where bids therefor will be received."

"It thus clearly appears that the Legislature construed the word 'municipalities' as contained in the title of said act, as well as the term 'municipal corporation,' as found in section 1 thereof, to mean county, city, town, board of education, school district or other political subdivisions of the state. It was clearly the intention of the Legislature to give these terms a broad and comprehensive meaning. Each of the municipalities mentioned in section 2, supra, are dependent for their support and maintenance upon taxes imposed and collected.

"No reason existed why the Legis'ature should confine benefits of the act in question to the cities, towns, and villages of the state and neglect from its operation all other units and subdivisions of government within the state. Serial bonds are but an arrangement whereby a corporate body pays off its indebtedness on the 'installment plan.' When the installment of the principal is paid, it stops interest thereon pro tanto.

"No one act of the Legislature will bring a greater fiscal benefit to the people of Oklahoma than the act here in question. It will result in saving to the taxpayers of Okla-homa millions of dollars in interest, remove the necessity of accumulating a large sinking fund to be preserved for a long number of years, and in many instances such funds have been threatened or diminished through unwise and unsafe investment by the holders thereof."

In our judgment, the state neither through its constitutional nor statutory provisions has intended at any time to relinquish the state's sovereignty as it pertains to the issuance of municipal bonds, and that their issuance constitutes a matter of general concern to the people of the state.

A wise and uniform state policy relating to the issuance of municipal bonds will certainly promote a more favorable market for such securities, and we, therefore, hold that, the bonds here involved not being issued under the provisions of chapter 22 of the Session Laws 1927, the Attorney General was fully within his rights in declining to approve said bonds.

The writ is denied.

MASON, V. C. J., and HARRISON, HUNT. CLARK, and RILEY, JJ., concur.