Dear Representative Webb,
¶ 0 This office has received your request for an Opinion asking in effect the following questions:
1. May a private association representing school board memberslobby the Legislature regarding school board or other educationissues and in doing so expend association funds partially derivedfrom membership dues paid from public funds?
 2. May a private association representing school board memberssupport or oppose an initiative or referendum and in doing soexpend association funds partially derived from membership feesor dues paid from public funds?
 I. A Private Association Representing School Board Members May Expend Association Funds To Lobby The Legislature Regardless Of The Fact That Some Of Those Funds Are Derived From Membership Dues Paid From Public Funds
¶ 1 Generally, the right of a private association to lobby[1] the various entities of government is protected by the First Amendment to the United States Constitution and ArticleII, § 22 of the Oklahoma Constitution. U.S. Const. amend. I; Okla. Const. art. II, § 22. Nothing in the United States or Oklahoma Constitution, United States Code, Oklahoma Statutes or case law would prohibit a private association representing school board members from lobbying. Your question, however, is whether such an association is prohibited from expending association funds partially derived from membership dues paid from public funds to lobby the Legislature. Implicit in your question is an assumption that there may be a prohibition against the expenditure of these association funds because they are public funds.
¶ 2 The initial answer to your first question is that once lawfully spent, these public funds lose their identity as public funds in the hands of a non-governmental entity such as the private association contemplated in your question. Krebs v.Board of Trustees of Teachers' Retirement System,102 N.E.2d 321, 326 (Ill. 1951); Champ v. Poelker, 755 S.W.2d 383, 388
(Mo.App. 1988).
¶ 3 The second analysis considers whether the funds in question were lawfully spent by the school boards, given that some of these funds will be expended by the association to lobby the Legislature. It is axiomatic that a public body such as a school board cannot do indirectly that which it cannot do directly. A.G. Opins. 81-288 and 79-151. Therefore, it is necessary to determine whether school boards have the authority to lobby the Legislature regarding education issues.
¶ 4 The Oklahoma Supreme Court has ruled that the powers of a school board are like those of a municipal corporation, JointSchool District No. 132 v. Dabney, 260 P. 486, 488-90 (Okla. 1927), and are limited to those granted by express words, "those fairly implied in or necessarily incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation." Board of Education of OklahomaCity v. Cloudman, 92 P.2d 837, 841 (Okla. 1939).
¶ 5 There are no constitutional provisions concerning public education that include express grants of power to school boards. Okla. Const. art. XIII, §§ 1-8. Such grants of power have been delegated to the Legislature by virtue of Article XIII, § 1, which provides that "[t]he Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated."
¶ 6 The powers expressly granted to school boards are set forth in the School Code of 1971, 70 O.S. 1991 and Supp. 1995, §§1-101 to 24-150, particularly 70 O.S.Supp. 1995, §§ 5-105[70-5-105] and 5-117. Section 5-105 is an express grant of general powers and provides in pertinent part:
 Every school [board] shall be a body corporate and shall possess the usual powers of a corporation for public purposes . . . and . . . may sue and be sued and be capable of contracting and being contracted with and holding such real and personal estate as it may come into possession of or by will or otherwise and as authorized by law.
70 O.S.Supp. 1995, § 5-105[70-5-105].
¶ 7 Title 70 O.S.Supp. 1995, § 5-117[70-5-117](A) enumerates the particular express powers granted to school boards which include:
 adopting rules governing the board and the school district;
 operating a public school system that best fits the needs of the school district;
 providing informational material including all pertinent financial information relevant to school bond and millage elections;
 purchasing, constructing or renting and maintaining buildings and facilities necessary for the school district;
acquiring property by condemnation;
 disposing of real or personal property no longer needed;
 Purchasing the necessary property, equipment, furniture and supplies to maintain and operate the school system;
 incurring all expenses within the limitations set by law necessary to perform these powers;
 contracting with and fixing the duties and compensation of necessary personnel; and
 exercising sole control over the schools and property of the district subject to the Oklahoma School Code.
¶ 8 Neither the Oklahoma Constitution nor Sections 5-105 or 5-117 of the Oklahoma Statutes, expressly empower a school board to lobby the Legislature concerning school board or education issues.
¶ 9 Having concluded that neither the Oklahoma Constitution nor statutes expressly empower school boards to lobby, we next determine whether the power of a school board to lobby the Legislature concerning education issues may be fairly implied or necessarily incidental to any power expressly granted. A similar question regarding the power of governmental subdivisions to lobby was addressed in Attorney General Opinion 82-6. That opinion concluded "that Oklahoma governmental subdivisions lack[ed] both the express and implied authority . . . to engage in advocacy calculated to influence legislative decision-making, either directly or by membership in organizations constituted for such purposes." The activity prohibited in that opinion came within the definition of "lobbying" in the Oklahoma statutes at the time the opinion was issued.[2] Thus, the Opinion effectively precluded governmental subdivisions from lobbying.
¶ 10 In reaching this conclusion Attorney General Opinion 82-6 mistakenly relied upon the California case of Mines v. DelValle, 257 P. 530 (Cal. 1927). In that case, the California Supreme Court held that neither the City of Los Angeles nor the Board of Public Service Commissioners had the express or implied authority to conduct a campaign so that a bond issue would be approved by the voters of the city.[3] Mines,257 P. at 536-37. Conducting a campaign to produce a particular outcome in an election is different from lobbying the Legislature. InPowell v. San Francisco, 144 P.2d 617 (Cal.App. 1944), a California appellate court pointed out that the California Supreme Court had made this distinction in a case decided just six months before Mines. In highlighting this distinction, thePowell court stated:
 That the Supreme Court of this state recognized that there is a difference between the expenditure of funds for election purposes and the use of money to pay expenses in appearances before a judicial or legislative body is demonstrated when the holdings in two cases decided within a six-month period — the Mines case and Crawford v. Imperial Irrigation Dist. — are considered. In the Crawford case the court said:
 "The employment of persons to influence legislation, or to influence decisions of the Land Department, or even the decisions of judicial tribunals, in a proper way, is not against sound public policy."
Powell, 144 P.2d at 619, citing Crawford v. ImperialIrrigation District, 253 P. 726, 728 (Cal. 1927) (emphasis added).
¶ 11 Reliance upon the Mines case in Attorney General Opinion 82-6 was misplaced, as that case dealt not with lobbying but with activities designed to influence the outcome of an election. ThePowell and Crawford cases were on point with respect to the activity under examination in Attorney General Opinion 82-6 and in this Opinion — lobbying.
¶ 12 Many of the express powers granted to a school board by virtue of 70 O.S.Supp. 1995, § 5-117[70-5-117] have been set forth above. A review of those express powers indicates two prominent features. First, that the primary goal and purpose of a school board is to establish and operate a school system for the district, and second, that broad and comprehensive powers are granted to a school board to accomplish this purpose. To execute these powers it is apparent that school boards must be able to lobby the Legislature concerning the multitude of bills it considers and passes every session with respect to education and Oklahoma's "system of free public schools."[4]
¶ 13 Concluding otherwise would result in prohibiting those who are in a position, and have indeed been elected, to know the facts concerning problems and needs of our public schools from providing useful and sometimes critical information to the Legislature. This was not the thinking of the Crawford court which, after reviewing the express powers of the public body being considered there, found that the public body necessarily had the implied power to present facts to the legislature regarding proposed legislation which would affect the public body. Crawford, 253 P. at 731. That thinking is equally applicable here. From the express powers granted school boards, it may be implied that they have the implied power to communicate information and facts to the Legislature concerning education and school board issues. The presentation of such facts and information is included under our broad definition of "lobbying."[5] Accordingly, we find that school boards have the implied power to lobby the Legislature.
¶ 14 We must point out that certain legislative action may also have some bearing on this question. From the definition of "lobbyist" and, therefore, from those who must register to be a lobbyist in Oklahoma, the Legislature has exempted publicofficials "acting in [their] official capacity" and publicemployees "acting on behalf of the governmental entity by which[they are] employed." 74 O.S.Supp. 1995, § 4249[74-4249](2)(b)-(c). How much significance should be given to this exception and whether, from it alone, the power of school boards (or for that matter, other public entities) to lobby the Legislature can be implied need not be answered in view of the preceding analysis and conclusion. It should be noted, however, that such a statutory exemption was the sole basis for the North Carolina Court of Appeals holding that counties and municipalities have the implied power to lobby.[6] North Carolina ex rel. Horne v.Chafin, 302 S.E.2d 281, 284 (N.C.App. 1983).
¶ 15 The power to lobby the Legislature is fairly implied in the powers expressly granted to a school board and essential to the purposes of a school board. Therefore, a school board may lawfully pay membership dues to a private association that then uses such funds to engage in lobbying. In view of this analysis, Attorney General Opinion 82-6 is hereby overruled and withdrawn.
 II. A Private Association Representing School Board Members May Not Expend Association Funds Partially Derived From Membership Dues Paid From Public Funds To Support Or Oppose An Initiative Or Referendum Question If Dues Were Paid And Received With This Intent
¶ 16 Regarding the expenditure of public funds in support or opposition of statewide initiatives or referendum:
 Any official in this state who shall direct or authorize the expenditure of any public funds under his care, except as specifically authorized by law, to be used either in support of, or in opposition to, any measure which is being referred to a vote of the people by means of the initiative or referendum, or which citizens of this state are attempting to have referred to a vote of the people by the initiative or referendum, shall be deemed guilty of a misdemeanor, and the office held by such party shall be adjudged vacant and shall be filled in the manner prescribed by law.
26 O.S. 1991, § 16-119[26-16-119].
¶ 17 School boards and their members are subject to this statute. A.G. Opin. 80-310. Thus, the right of school board members to participate in the petition process is qualified by the restrictions imposed under 26 O.S. 1991, § 16-119[26-16-119]. However, these restrictions do not apply to private associations of which school boards are members.
¶ 18 Section 16-119, being penal in nature, must be strictly construed and restricted to the identical transaction forbidden therein. Quinn v. City of Tulsa, 777 P.2d 1331, 1339 (Okla. 1989). As evidenced by the forfeiture of office provision imposed by the section, the clear intent of the statute is to restrict the actions of public officers in approving the expenditure of public funds to support or oppose an initiative or referendum.26 O.S. 1991, § 16-119[26-16-119]. Strictly construing this section, a private association would neither be a public officer nor have the authority to direct the expenditure of public funds, and thus Section 16-119 does not contemplate enforcement against a private association. However, an individual and a public officer who conspire to violate Section 16-119, may both be subject to prosecution for conspiracy under 21 O.S. 1991, § 421[21-421].
¶ 19 Pursuant to 70 O.S. 1991, § 5-125[70-5-125], a school board could not, however, pay membership dues to a private association, such as the one contemplated in your question, for the express purpose of supporting or opposing an initiative or referendum. Under Section 5-125 any school board member who voted to pay such dues for this purpose and the private association, or person acting for such association, having notice that the member had voted to pay dues with this intent would be subject to civil and criminal liability.[7]
 ¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A private association representing school board members may expend association funds to lobby the Legislature regardless of the fact that some of those funds are derived from membership dues paid from public funds because school boards have the implied power to lobby the Legislature by virtue of their express powers granted in 70 O.S.Supp. 1995, § 5-117[70-5-117](A). Attorney General Opinion 82-6 is hereby overruled and withdrawn
 2. A private association representing school board members may not expend association funds partially derived from membership dues paid from public funds to support or oppose an initiative or referendum question if the dues were paid and received with this intent. 70 O.S. 1991, § 5-125[70-5-125].
 3. A public officer and an individual who conspire to violate 26 O.S. 1991, § 16-119[26-16-119], may both be subject to criminal prosecution for conspiracy under 21 O.S. 1991, § 421[21-421].
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 VICTOR N. BIRD CHIEF DEPUTY ATTORNEY GENERAL (CIVIL DIVISION)
 KEVIN NELSON ASSISTANT ATTORNEY GENERAL
[1] Except where noted otherwise, the term "lobby" or "lobbying" shall be used throughout this Opinion in accordance with its present statutory definition. "Lobbying" is presently defined at 74 O.S.Supp. 1995, § 4249[74-4249](1) as follows:
 "Lobbying", or any derivative of the word, means any oral or written communication with a member of the Legislature, with the Governor, with a member of the Corporation Commission, with a member of the judiciary or with an employee of the Legislature, the Governor, the Corporation Commission or the judiciary on behalf of a lobbyist principal with regard to the passage, defeat, formulation, modification, interpretation, amendment, adoption, approval or veto of any legislation, rule, regulation, executive order or any other program, policy or position of the state government; provided, however, it shall not mean testimony given before, or submitted in writing to, a committee or subcommittee of the Legislature, nor a speech, article, publication or other material that is widely distributed, published in newspapers, magazines or similar publications or broadcast on radio or television; provided further, it shall not mean representation of himself or herself or a client by an attorney acting in a professional capacity as an attorney who has entered an appearance in a court proceeding or quasi-judicial proceeding or a legislative or quasi-judicial proceeding before the Corporation Commission[.]
[2] In 1982, "lobbying" was defined as follows:
 "Lobbying", or any derivative of the word thereof, means promoting, opposing or otherwise influencing any official action[.]
74 O.S. 1981, § 4001[74-4001](8) (emphasis added).
"Official action" was defined at 74 O.S. 1981, § 4001[74-4001](10) as follows:
 "Official action" means any judicial, executive, legislative or administrative action which shall include, but is not limited to, the promulgation of rules and regulations and the setting of rates[.]
[3] In Oklahoma, a public body such as a school board is statutorily prohibited from conducting a campaign of the nature examined in Mines. 26 O.S. 1991, § 16-119[26-16-119] and 70 O.S.Supp.1995, § 5-117[70-5-117](A)(6). This prohibition is discussed in Part II of this opinion which addresses your second question.
[4] Okla. Const. art. XIII, § 1 requires the Legislature to "establish and maintain a system of free public schools wherein all the children of the State may be educated."
[5] The definition of "lobbying" is found at 74 O.S.Supp.1995, § 4249[74-4249](1), and set forth at note 1 of this Opinion.
[6] Given that the relevant North Carolina statute exempted officials and employees of the state, the United States, a county, municipality, school district or other governmental agency, it is certain that the North Carolina Court of Appeals would conclude that school districts and other governmental agencies have the implied power to lobby.
[7] Title 70 O.S. 1991, § 5-125[70-5-125], parallels the rule of law that a public body such as a school cannot do indirectly that which it cannot do directly. Section 5-125 provides in pertinent part:
 A. Every member of the board of education or board of county commissioners who shall hereafter vote for the payment of any money or transfer of any property belonging to the school district in settlement of any claim known to such member to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for any school district, by any officer or officers thereof, and every person having notice of the facts with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall thereafter be paid, or such transfer of property shall be made, shall be liable in damage to all innocent persons in any manner injured thereby and shall be liable to the school district affected for double the amount of all sums of money so paid, and double the value of property so transferred, as a penalty to be recovered by civil suit brought by the board of education of such school district, or by any school district elector thereof, as provided in Section 5-126 of this Title.
 B. Any member of a board of education of a school district who votes for the payment of any money or transfers any property belonging to the school district in settlement of any claim known to such member to be fraudulent, void or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made for any such district shall be guilty of a misdemeanor. Every person having notice of the facts with whom any unauthorized, unlawful or fraudulent contract shall have been made or to whom or for whose benefit such money or property shall have been or thereafter will be paid shall be guilty of a misdemeanor. Upon conviction of a misdemeanor described in this section, the person shall make full restitution of all monies and/or property misallocated and be punished by a fine of not less than One Thousand Dollars ($1,000.00) or by imprisonment in the county jail for not to exceed one (1) year, or by both such fine and restitution and imprisonment and if such person is a member of a board of education, shall be removed from office pursuant to Section 1181 et seq. of Title 22 of the Oklahoma Statutes or Section 91 et seq. of Title 51 of the Oklahoma Statutes.