Dear Aditor and Inspector McMahan,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Do the exceptions contained in 70 O.S. 2001, § 5-124(B)-(D), pertaining to interests of school board members in contracts with the district, conflict with Article X, Section 11 of the Oklahoma Constitution?
 I.
¶ 1 Article X, Section 11 of the Oklahoma Constitution provides:
The receiving, directly or indirectly, by any officer of the State, or of any county, city, or town, or member or officer of the Legislature, of any interest, profit, or perquisites, arising from the use or loan of public funds in his hands, or moneys to be raised through his agency for State, city, town, district, or county purposes shall be deemed a felony. Said offense shall be punished as may be prescribed by law, a part of which punishment shall be disqualification to hold office.
¶ 2 You ask whether the provisions of 70 O.S. 2001, §5-124[70-5-124](B)-(D), which create exceptions to the general rule that members of a school district board of education may not have an interest in a contract with the district they represent, conflict with the above constitutional provision. Section 5-124 provides as follows:
 A. Except as otherwise provided in this section, no board of education of any school district in this state shall make any contract with any of its members or with any company, individual or business concern in which any of its members shall be directly or indirectly interested. All contracts made in violation of this section shall be wholly void. A member of a board of education shall be considered to be interested in any contract made with any company, individual, or any business concern if the member of the board of education or any member of the immediate family of the member owns any substantial interest in same.
 B. For purposes of this section, the following shall not be considered the making of a contract:
 1. Any contract with a qualified nonprofit Internal Revenue Code 501(c)(3) organization, except for contracts paying salaries or expenses or except a contract involving the counseling or instruction of students or staff;
 2. Monthly billings submitted to any school district for public utility companies, electric cooperatives or telephone companies, whose services are regulated by the Oklahoma Corporation Commission, or billings of the utility companies, electric cooperatives or telephone companies pertaining to installations or changes in service, where tariffs for the charges or billings by the companies are on file with the Oklahoma Corporation Commission; and
 3. The depositing of any funds in a bank or other depository.
 C. 1. The governing board of a technology center school district may enter into a contract for the technology center school district to provide training for a company, individual or business concern by which a member of the board is employed. A board member shall abstain from voting on any such contract between the technology center school district board and the company, individual or business concern by which the member is employed.
 2. A board of education may enter into a contract with a company, individual, or business concern in which a board member or a member's spouse is employed by or has a substantial interest if the company, individual, or business concern is the only supplier having a place of business located within the school district or within ten (10) miles of the needed services or materials. The board member shall abstain from voting on any such contract between the company, individual, or business concern in which that member has a substantial interest, and the minutes of the board meeting at which the contract is approved shall state that the contract is being made because of the lack of another supplier with a place of business located within the school district.
 3. A board of education which has entered into a lease-purchase agreement, prior to the time a board member which has a substantial interest in the company, individual, or business concern became a member of the board of education, may, after the member becomes a board member, continue to exercise any fiscal year options in the lease-purchase agreement for renewal of the lease-purchase for the balance of the contract term. The affected board member shall abstain from voting on such fiscal year renewal of the continuation of the lease-purchase agreement.
 4. A board of education may enter into a contract with a company, individual or business concern in which a board member or a spouse of a member is employed and has no substantial interest if the school district does not include any part of a municipality with a population greater than two thousand five hundred (2,500) according to the latest Federal Decennial Census and the company, individual or business concern is located in the corporate limits of a municipality which is in the boundaries of the school district.
 D. A board member shall not be considered to be directly or indirectly interested in any contract with a company, individual, or business concern that employs such board member or the spouse of the board member if the board member or the spouse of the board member has an interest of five percent (5%) or less in the company, individual, or business concern.
Id. (footnote omitted).
¶ 3 Subsections (B) through (D) of this statute purport to create exceptions to the strict provisions of Subsection (A), forbidding school board members from having either a direct or indirect interest in a contract with the board of education.Id. You ask whether the exceptions under Subsections (B) through (D) are valid in light of the unequivocal bar of ArticleX, Section 11 of the Oklahoma Constitution. Only if we determine that Section 11 does not apply to school districts may we conclude the questioned statute is legally permissible.
 II.
¶ 4 As observed in Attorney General Opinion 01-32, although the type of "interest" that disqualifies public officers from certain types of transactions under Article X, Section 11 is usually a financial or pecuniary interest, "[a]bsence of financial return during the period of such public service is not a complete answer to the sweeping prohibition" of this provision. A.G. Opin. 01-32, 141 (citing Yonkers Bus, Inc. v. Maltbie, 23 N.Y.S.2d 87, 90-91
(N.Y.Sup.Ct. 1940)). The general welfare and prosperity of a company in which a public official has some involvement may be a prohibited interest. Id.
¶ 5 The threshold question to be addressed is whether a school board member is an officer subject to the prohibitions of ArticleX, Section 11 of the Oklahoma Constitution. The provision bars "any officer of the State, or of any county, city, or town, or member or officer of the Legislature" from receiving, directly or indirectly, "any interest, profit, or perquisites, arising from the use or loan of public funds in his hands, or moneys to be raised through his agency for State, city, town, district, or county purposes." Id. An officer of a school district is not specifically mentioned in the list of officers prohibited from receiving such profit.
A. Is a member of a school board an officer for the purposesof Article X, Section 11, just as are members of governing bodiesof cities, towns or counties?
¶ 6 Article X, Section 11 of the Oklahoma Constitution has not changed since its adoption in 1907. At statehood and for many years thereafter, common schools were organized under and financed by city and county governments. See Okla. Rev. Stat. Ann., ch. 74, art. VII, §§ 7743-7773 (1910); id. art. VIII, §§ 7774-7794; id. art. IX, § 7815. In Joint School DistrictNo. 132 v. Dabney, 260 P. 486 (syllabus ¶¶ 1, 2) (Okla. 1927), the Supreme Court held the powers of a school board in that era were like those of a municipal corporation. Sections 7745 and 7779 of the 1910 Oklahoma Revised Statutes Annotated described a school district of a city and county, respectively, to be a "body corporate[,] and shall possess the usual power[s] of a corporation for public purposes," implying that a school district is a separate entity from the city or county within whose limits the school district lies. This interpretation is confirmed inState ex rel. Riley v. City of Lawton, 224 P. 347 (syllabus ¶ 3) (Okla. 1924), wherein the Oklahoma Supreme Court held that school districts were distinct corporate entities, separate and apart from cities and towns within which they existed.
¶ 7 Thus, for a number of years after statehood a school district was a hybrid entity. For funding purposes the district relied on city or county government, and taxes levied for school support were held and disbursed by city and county treasurers, respectively. But the school district was a discrete corporate body, separate and distinct from the city or county within which it was contained. In 1949, the 22nd Oklahoma Legislature adopted the Oklahoma School Code which abolished "city" or "county" schools, and thereafter the State Department of Education, the State Superintendent of Public Education, and local boards of education were charged with full responsibility and control of school funding and school operation. 1949 Okla. Sess. Laws, tit. 70, ch. 1A, pt. 1. It is now clear under State statutes that a school district is legally not a "city" or "county."
¶ 8 Article X, Section 11 of the Oklahoma Constitution provides that violation of its provisions is a felony, and shall result in disqualification of the violator from office. Because of the penal nature of the enactment, it must be strictly construed against the State, and cannot be enlarged by implication or extended by inference. State v. Humphrey, 620 P.2d 408, 409
(Okla.Crim. 1980); see also A.G. Opin. 01-32, 141-42.
B. Is a school district an "agency" of the State of Oklahomafor purposes of Article X, Section 11 of the OklahomaConstitution?
¶ 9 Current law specifically provides that a school district is a separate legal entity, 70 O.S. 2001, § 1-108[70-1-108], and cannot be said to be an integral part or subdivision of city or county government. Further, a school district is not an "agency" of the State of Oklahoma from the standpoint of being a department or institution within the executive branch of State government. A.G. Opin. 96-47, 116-17. The term "agency" is loosely used in a number of different ways, and has no universal or fixed statutory meaning. Id.
¶ 10 While courts at times have referred to school districts as "subordinate agencies of the State," (see Dowell v. Bd. ofEduc., 91 P.2d 771, 773-75 (Okla. 1939)), the framers of the Oklahoma Constitution chose not to include school districts in the list of specific entities to which the conflict provisions of Article X, Section 11 would apply, but limited its provisions to "officer[s] of the State, or of any county, city, or town, or member or officer of the Legislature." Okla. Const. art. X, § 11. The drafters of the Constitution were certainly aware of the nature of school districts as separate governmental entities when they wrote Article X, Section 26(a), the balanced budget provision, which refers to a "county, city, town, township, school district, or other political corporation, or subdivision of the state." Id.
¶ 11 For instance, the restrictions of Article X, Section 26 have been held not to apply to public trusts with cities or counties as beneficiaries,[1] although the public trust statutes refer to such trusts as "an agency of the state and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created." 60 O.S. 2001, § 179[60-179]. Likewise, a housing authority created under 63 O.S. 2001, §§ 1051[63-1051] — 1084 is not a "subdivision of the state," or a department or instrumentality of the city or county in which it operates, and thus is not subject to the restrictions of Article X, Section 26. Boardman v. Okla.City Hous. Auth., 445 P.2d 412 (syllabus ¶ 3) (Okla. 1968).
¶ 12 Careful analysis of the terms "agency" and "public officer" was undertaken in A.G. Opin. 96-47, pertaining to public trusts, and that analysis is useful here in deciding whether a school district is an "agency," or a school district board member is an "officer of the State," for purposes of Article X, Section 11. Although 60 O.S. 2001, § 178[60-178](A) states that trustees of public trusts are "public officers," this office opined in Opinion 96-47 that a public trust is not an "agency" forall
purposes of State law, and accordingly withdrew Attorney General Opinion 80-145 as being overbroad. A.G. Opin. 96-47, 117.
¶ 13 Attorney General Opinion 80-145 examined exceptions to conflicts of interest of trustees of public trusts in 60 O.S.Supp. 1979, § 178.8[60-178.8]. See A.G. Opin. 80-145, 243-44. The exceptions for trustees of public trusts in Section 178.8 are rather similar to the exceptions as to contracts involving school board members in 70 O.S. 2001, § 5-124[70-5-124]. Opinion 80-145 concluded that certain parts of 60 O.S. Supp. 1979, § 178.8[60-178.8],
which purported to make lawful certain contractual relationships between public trusts and their trustees, violated Article X, Section 11. A.G. Opin. 80-145, 250-51.
¶ 14 Subsequently, the constitutionality of Section 178.8 was before the Oklahoma Supreme Court in Tulsa Industrial Authorityv. State ex rel. Cartwright, 672 P.2d 299 (Okla. 1983). InTulsa Industrial Authority, the trial court held part of the statutory exceptions to conflicts of interest unconstitutional.Id. at 300. However, on appeal the Supreme Court declined to rule on the merits, holding that factual requisites were not met justifying the court to grant declaratory relief, i.e., a justiciable issue was not presented. Id. at 302. The Oklahoma Supreme Court reversed the trial court and remanded the case with directions to dismiss. Id. In effect, the Supreme Court's action left Attorney General Opinion 80-145 undisturbed. Seeid. However, the broader question of whether the Legislature could validly abridge, under any circumstances, the constitutional prohibition against self-dealing by public officers was left open. See id.
 III.
¶ 15 As previously discussed, Attorney General Opinion 96-47 later determined that a public trust is not an agency of the State for purposes of the Oklahoma Personnel Act, 74 O.S. Supp.1995, § 840-1.3[74-840-1.3](1), and cautioned against the use of the term "agency" in too generalized a fashion. A.G. Opin. 96-47, 115-17.The prior conclusion of Attorney General Opinion 80-145 that "a public trust is an agency of the state with the same legal status as any other agency of the state" was found to be too broad, and accordingly Opinion 80-145 was withdrawn. A.G. Opin. 96-47, 117.
¶ 16 Since Attorney General Opinion 96-47 concluded that a public trust is not an agency of the State for all purposes, and trustees of a public trust are not "officers" described in the Constitution, and since school districts or boards of education are not specifically set out in Article X, Section 11, it logically follows that a board member, as an officer of such an entity, is not covered by the constitutional prohibition either.
¶ 17 While there have been numerous Attorney General Opinions on the operation of Section 5-124 of Title 70,[2] there are no Attorney General Opinions or reported cases ruling on the constitutionality of the statute, and the exceptions to the conflict of interest rule of Article X, Section 11. Also, there are no reported cases on the constitutionality of the exceptions to conflicts of interest in 62 O.S. 2001, § 371[62-371], a statute very similar to 70 O.S. 2001, § 5-124[70-5-124], except that Section 371 pertains to officers of a variety of public agencies (i.e., county commissioners, city councils, town boards, and boards of other "local subdivisions") in addition to school districts. Because of the penal nature of Article X, Section 11, the requirement that penal statutes be strictly construed against the State, (Humphrey, 620 P.2d at 409), and the presumption that statutes are constitutional, (see Reherman v. Okla. Water Res.Bd., 679 P.2d 1296, 1300 (Okla. 1984)), we conclude that an officer of a school district is not an "officer of the State" within the meaning of Article X, Section 11 of the Oklahoma Constitution and that the prohibitions of this section do not govern 70 O.S. 2001, § 5-124[70-5-124] pertaining to school districts.
¶ 18 The public policy of assuring that public officers or members of public bodies are not "interested" directly or indirectly in contracts involving the public body or agency which they serve, is a noble one and cannot be assailed. The drafters of the Oklahoma Constitution addressed this concern by adopting Article X, Section 11. However, the framers of the Constitution, for whatever reason, chose not to apply the constitutional prohibition against conflicts of interest to officers of all
political subdivisions of the State, which would include members of boards of education of school districts. Thus, while arguably not following the spirit of the Constitution's statement against conflicts of interest by public officials, we cannot say as a matter of law that the conflict of interest exceptions set out in70 O.S. 2001, § 5-124[70-5-124] and 62 O.S. 2001, § 371[62-371](A)(1)-(D), violate the Oklahoma Constitution.
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Pertaining to interests of school board members in contracts with the school district, because school districts are not specifically named in Article X, Section 11 of the Oklahoma Constitution, and because Section 11, being a penal provision must be strictly construed against the State, the provisions of 70 O.S. 2001, § 5-124(B)-(D) and 62 O.S. 2001, § 371(A)(1)-(D), insofar as they purport to relieve school board members of certain conflicts of interest, are not on their face unconstitutional.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] See Morris v. City of Oklahoma City, 299 P.2d 131, 137-38
(Okla. 1956); Bd. of County Comm'rs v. Warram, 285 P.2d 1034,1042 (Okla. 1955).
[2] See Attorney General Opinions 69-263; 72-180; 73-234; 74-181; 77-167; 79-21; 79-183; 80-134; 81-70; 83-119; 88-88. Seealso A.G. Opin. 80-298 (as to college regents).